# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

DONALD GRADY II,

               Plaintiff,

      v.

BOARD OF TRUSTEES OF NORTHERN
ILLINOIS UNIVERSITY, F. WILLIAM
NICKLAS, JOHN G. PETERS, DEBRA
BOUGHTON, KATHERINE LITTLE,
RANDI NAPIENTEK, JONATHON
OSTENBURG and MICHAEL STANG

              Defendants.

Case No. 14-CV-1245

Honorable Harry D. Leinenweber

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT OF DEFENDANTS BOARD OF TRUSTEES
## OF NORTHERN ILLINOIS UNIVERSITY,
## F. WILLIAM NICKLAS AND JOHN G. PETERS

Gerald L. Maatman, Jr
Mary Kay Klimesh
Christina M. Janice
Seyfarth Shaw LLP
131 S. Dearborn St., Suite 2400
Chicago, IL 60603
gmaatman@seyfarth.com
mklimesh@seyfarth.com
cjanice@seyfarth.com
Tel:    (312) 460-5000
Fax:   (312) 460-7000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND .........................................................................................3

ARGUMENT ................................................................................................................13

I.    PLAINTIFF'S RACE DISCRIMINATION CLAIMS FAIL ON THE
UNDISPUTED FACTS AND AS A MATTER OF LAW ................................13

        A.    Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination ...................15

                1.    Plaintiff Cannot Demonstrate That He Was Meeting NIU's
Legitimate Expectations .........................................................16

                2.    Plaintiff Cannot Identify A Single Similarly-Situated Employee
Who Was Treated More Favorably Than He Was Treated ......18

        B.    Plaintiff Cannot Demonstrate Pretext ...............................................20

II.    PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW .................22

        A.    Plaintiff Cannot Make A Prima Facie Case Of Retaliation ................................23

                1.    Plaintiff Cannot Establish A Causal Connection Between Alleged
Protected Activity And Adverse Employment Action By Any
Defendant ................................................................................23

                2.    Plaintiff Cannot Establish Pretext .........................................25

                3.    Pretext Cannot Be Established When The Adverse Action Was
Taken In Good Faith................................................................25

III.    PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS AGAINST PETERS
AND NICKLAS FAIL .....................................................................................27

        A.    Plaintiff Waived Any Argument That He Was Entitled To More Process
Than He Received Under Article 11................................................27

        B.    Plaintiff Was Provided All The Process He Was Due .........................................27

                1.    Pre-Termination Process.........................................................28

                2.    Post-Termination Process ........................................................30

        C.    Defendants Peters And Nicklas Are Entitled To Qualified Immunity.................31

1.      Plaintiff Cannot Demonstrate His Constitutional Rights Were
        Violated..................................................................................................32

2.      Plaintiff Cannot Establish His Alleged Right To More Process In
        This Case Was "Clearly Established" ....................................................32

3.      Under *Alston v. King*, Plaintiff Cannot Obtain Damages For Any
        Procedural Due Process Violation............................................................35

4.      Plaintiff  Is Not Entitled As A Matter of Law To Reinstatement To
        The Position of Chief of Police As A Remedy For Any Procedural
        Due Process Violation ...........................................................................36

IV.     PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM AGAINST PETERS
        AND NICKLAS FAILS ...................................................................................36

        A.     Neither Peters Nor Nicklas Publicly Made False Statements That
               Stigmatized Plaintiff ...............................................................................38

        B.     There Is No Evidence That It Is "Virtually Impossible" For Plaintiff To
               Find New Employment In The Law Enforcement Field......................................38

V.      COUNT VII OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED
        BECAUSE CLAIMS UNDER THE ILLINOIS STATE OFFICIALS AND
        EMPLOYEES ETHICS ACT MUST BE BROUGHT IN STATE COURT ..................39

        CONCLUSION....................................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. King*,
    231 F.3d 383 (7th Cir. 2000) ............................................... 35

*Anderson v. Donahoe*,
    699 F.3d 989 (7th Cir. 2012) ............................................... 13

*Argyropoulos v. City of Alton*,
    539 F.3d 724 (7th Cir. 2008) ............................................... 22

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) ............................................... 28

*Batagiannis v. West Lafayette Community School Corp.*,
    454 F.3d 738 (7th Cir. 2006) ............................................... 27, 36, 37

*Boston v. U.S. Steel Corp.*,
    816 F.3d 455 (7th Cir. 2016) ............................................... 26

*Brady v. Maryland*,
    373 U.S. 83 (1963) ............................................... *passim*

*Brown v. Illinois Dept. of Nat. Res.*,
    499 F.3d 675 (7th Cir. 2007) ............................................... 24

*Burks v. Wisconsin Dep't of Transp.*,
    464 F.3d 744 (7th Cir. 2006) ............................................... 24

*Buttitta v. City of Chicago*,
    9 F.3d 1198 (7th Cir. 1993) ............................................... 28

*Carey v. Piphus*,
    435 U.S. 247 (1978) ............................................... 35

*Codd v. Velger*,
    429 U.S. 624 (1977) ............................................... 38

*Cole v. Bd. of Trustees of N. Ill. Univ.*,
    No. 15-2305, 2016 WL 5394654 (7th Cir. Sept. 27, 2016) ............................................... 14, 19

*Cole v. Board of Trustees of Northern Illinois University*,
    38 F. Supp. 3d 925 (N.D. Ill. 2014) ............................................... 40

*Coleman v. Donahoe*,
   667 F.3d 835 (7th Cir. 2012) ................................................................. 19, 20, 21

*Covell v. Menkis*,
   595 F.3d 673 (7th Cir. 2010) ................................................................. 38

*Dargis v. Sheehan*,
   526 F.3d 981 (7th Cir. 2008) ................................................................. 35

*Davis v. Time Warner Cable*,
   651 F.3d 664 (7th Cir. 2011) ................................................................. 22

*Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522*,
   657 F.3d 595 (7th Cir. 2011) ................................................................. 22, 23

*Ellis v. United Parcel Serv., Inc.*,
   523 F.3d 823 (7th Cir. 2008) ................................................................. 18, 19

*Essex v. United Parcel Serv., Inc.*,
   111 F.3d 1304 (7th Cir. 1997) ................................................................. 15

*Falk v. Cook Cty. Sheriff's Office*,
   No. 93 C 3842 WL 498166 (N.D. Ill. Nov. 30, 1993) ......................................... 24

*Gonzalez v. Vill. of West Milwaukee*,
   671 F.3d 649 (7th Cir. 2012) ................................................................. 32

*Grayson v. O'Neill*,
   308 F.3d 808 (7th Cir. 2002) ................................................................. 25

*Green v. Nat'l Steel Corp., Midwest Division*,
   197 F.3d 894 (7th Cir. 1999) ................................................................. 26

*Hague v. Thompson Distrib. Co.*,
   436 F.3d 816 (7th Cir. 2006) ................................................................. 20

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................. 31

*Harper v. Fulton Cty., Ill.*,
   748 F.3d 761 (7th Cir. 2014) ................................................................. 15

*Head v. Chicago Sch. Reform Bd. of Trustees*,
   225 F.3d 794 (7th Cir. 2000) ................................................................. 28, 30

*Hobbs v. City of Chicago*,
   573 F.3d 454 (7th Cir. 2009) ................................................................. 14

iv

*Hudgens v. Wexler & Wexler*,
    391 F. Supp. 2d 634 (N.D. Ill. 2005)................................................................15

*Jenkins v. White Castle Mgmt. Co.*,
    No. 12-CV-7273, 2016 WL 5476234 (N.D. Ill. Sept. 29, 2016)............................................22

*Johnson v. City of Chicago Board of Education*,
    142 F. Supp.3d 675 (N.D. Ill. 2015) ................................................................19

*Knapp v. Evergos, Inc.*,
    15-CV-754, 2016 WL 4720026 (N.D. Ill. Sept. 9, 2016) (Feinerman, J.) ............................14

*Landstrom v. Ill. Dep't of Children & Family Servs.*,
    892 F.2d 670 (7th Cir. 1990) ................................................................32

*Lashbrook v. Oerkfitz*,
    65 F.3d 1339 (7th Cir. 1995) ................................................................39

*Little v. Ill. Dept. of Revenue*,
    369 F.3d 1007 (7th Cir. 2004) ................................................................18, 19

*Malarca v. City of Madison*,
    224 F.3d 727 (7th Cir. 2000) ................................................................25

*Malley v. Briggs*,
    475 U.S. 335 (1986) ................................................................32

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................27, 31

*McAllister v. Price*,
    615 F.3d 877 (7th Cir. 2010) ................................................................32

*McMahon v. Kindlarski*,
    512 F.3d 983 (7th Cir. 2008) ................................................................37

*Modrowski v. Pigatto*,
    712 F.3d 1166 (7th Cir. 2013) ................................................................13

*Montgomery v. Am. Airlines, Inc.*,
    626 F.3d 382 (7th Cir. 2010) ................................................................18

*Moore-Fotso v. Bd. of Edu. of the City of Chicago*,
    No. 12-CV-10419, 2016 WL 5476235 (N.D. Ill. Sept. 29, 2016) ............................14, 22, 23

*Moss v. Martin*,
    473 F.3d 694 (7th Cir. 2007) ................................................................28

*Naik v. Boehringer Ingelheim Pharms., Inc.*,
  627 F.3d 596 (7th Cir. 2010) ..........................................................................20

*Newman v. Burgin*,
  930 F.2d 955 (1st Cir. 1991)..........................................................................31

*Olivieri v. Rodriguez*,
  122 F. 3d 406 (7th Cir. 1997) ..........................................................................39

*Ortiz v. Werner Enters., Inc.*,
  No. 15-2574, 2016 WL 4411434 (7th Cir. Aug. 19, 2016) ...................... 14, 22, 23

*Osteen v. Henley*,
  13 F. 3d 221 (7th Cir. 1993) ..........................................................................40

*The People of the State of Illinois v. Andrew Rifkin*,
  No. 11 CF 762 (Illinois 16th Judicial Circuit, DeKalb County) ...................*passim*

*Peters v. Renaissance Hotel Operating Co.*,
  307 F.3d 535 (7th Cir. 2002) ..........................................................................25

*Post v. City of Fort Lauderdale*,
  7 F.3d 1552 (11th Cir. 1993) ..........................................................................34

*Pugel v. Bd. of Trs. of the Univ. of Ill.*,
  378 F.3d 659 (7th Cir. 2004) ..........................................................................31

*Pugh v. City of Attica, Indiana*,
  259 F.3d 619 (7th Cir. 2001) ..........................................................................25

*Purvis v. Oest*,
  614 F.3d 713 (7th Cir. 2010) ..........................................................................31

*Ratliff v. City of Milwaukee*,
  795 F.2d 612, 626 (7th Cir. 1986)..................................................................38

*Riano v. McDonald*,
  833 F.3d 830 (7th Cir. 2016) ..........................................................................31

*Roger v. Yellow Freight Sys., Inc.*,
  21 F.3d 146 (7th Cir. 1994) ..........................................................................21

*Senske v. Sybase, Inc.*,
  588 F.3d 501 (7th Cir. 2009) ..........................................................................19

*Shelby v. Rockford Sch. Dist. #205*,
  No. 96-CV-50396, 2000 WL 28257 (N.D. Ill. Jan. 7, 2000)..............................21

*Smith v. City of Chicago,*
  242 F.3d 737 (7th Cir. 2001) ................................................................33

*Smith v. Town of Eaton,*
  910 F.2d 1469 (7th Cir. 1990) ..............................................................28

*Steidl v. Fermon,*
  494 F.3d 623 (7th Cir. 2007) ................................................................33

*Stewart v. Henderson,*
  207 F.3d 374 (7th Cir. 2000) ................................................................25

*Stone v. Board of Trustees of Northern Illinois University,*
  38 F. Supp. 3d 935 (N.D. Ill. 2014) .....................................................41

*Strasburger v. Bd. of Educ. Of Hardin County,*
  143 F.3d 351 (7th Cir. 1998) ................................................................38

*Sweatt v. Union Pac. R. Co.,*
  796 F.3d 701 (7th Cir. 2015) ................................................................15

*Tex. Dep't of Cmty. Affairs v. Burdine,*
  450 U.S. 248 (1981) ..............................................................................15

*Townsend v. Vallas,*
  256 F.3d 661 (7th Cir. 2001) ................................................................38

*Univ. of Texas v. Nassar,*
  133 S. Ct. 2517 (2013) ..........................................................................23

*Wade v. Lerner New York, Inc.,*
  243 F.3d 319 (7th Cir. 2001) ..........................................................20, 21

*Walker v. Bd. Of Regents of the Univ. of Wis. Sys.,*
  410 F.3d 387 (7th Cir. 2005) ................................................................18

*Watts v. SBC Servs., Inc.,*
  No. 05-CV-3111, 2006 WL 2224054 (N.D. Ill. July 31, 2006)............16

*Wheeler v. Lawson,*
  539 F.3d 629 (7th Cir. 2008) ................................................................33

**Statutes**

435 ILCS 430/15-25....................................................................................40, 41

42 U.S.C. §1981 ..........................................................................................13, 22

42 U.S.C. § 1983 ..............................................................................................24

Illinois State Officials and Employees Ethics Act, 5 ILCS 430/1-1 *et seq.* ..........................*passim*

Defendants Board of Trustees of Northern Illinois University ("NIU"), F. William Nicklas, and John G. Peters ("Defendants"),[1] by their attorneys, Seyfarth Shaw LLP, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Northern District of Illinois Local Rule 56.1, hereby submit this Memorandum of Law in Support of Their Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Donald Grady ("Plaintiff") has asserted a host of claims against Defendants, including race discrimination (Counts I and III), retaliation (Counts II and IV), denial of due process (Counts V and VI), and retaliation in violation of the Illinois State Officials and Employees' Ethics Act (Count VII). These claims grew out of the termination of Plaintiff's employment at Northern Illinois University, which in turn arose from the failure of the Northern Illinois University Police Department ("NIUPD") – a public safety department that Plaintiff headed and directed – to turn over potentially exculpatory evidence in a criminal prosecution against one of its officers accused of sexual assault of a student, Andrew Rifkin.

The termination of Plaintiff's employment occurred after Judge Robbin Stuckert heard testimony from Plaintiff and Lieutenant Kartik Ramakrishnan ("Ramakrishnan") at a November 2, 2012 sanctions hearing in *Rifkin* that although Plaintiff and Ramakrishnan each interviewed two students who came forward with information, their witness statements taken by NIUPD had not been turned over to the State's Attorney and no police report of the interviews had been generated. Stuckert found that NIUPD had committed a "*Brady* violation," ordered NIUPD to turn over its exculpatory materials to the State's Attorney, and reset the hearing. At the second

---

[1] Defendants Debra Boughton, Katherine Little, Randi Napientek, Jonathon Ostenburg, and Michael Stang ("Grievance Committee Defendants") have separately and concurrently moved for summary judgment on Plaintiff's Due Process Claim (Count V).

hearing on the morning of November 9, 2012, while NIUPD was still under Plaintiff's command, State's Attorney Julie Trevarthan advised the Court that NIUPD had not turned over its reporting in the *Rifkin* matter. Judge Stuckert again ordered NIUPD to comply. That afternoon, Defendant John G. Peters, then president of NIU, appointed Defendant F. William Nicklas to assume oversight and supervision of NIUPD. Nicklas placed Plaintiff and Ramakrishnan on paid administrative leave, and conducted an investigation leading both to the bringing of administrative charges against Plaintiff for involvement in a *Brady* violation and failure of supervision, and the subsequent termination of his employment.

After being placed on paid administrative leave Plaintiff, an African-American, raised for the first time – and alleges in this litigation – that was treated in a discriminatory and retaliatory manner, and did not receive the same preferential treatment (a separation agreement with pay) as other employees of Northern Illinois University allegedly received upon their separation from employment. Plaintiff's claims are baseless, unsupported by the evidence of Record, and fail as a matter of law as the adverse employment actions taken against him were taken by a different decision-maker than the comparators he has identified, and these comparators are otherwise insufficient. Further, Defendant Nicklas promoted an African-American to serve as Acting Chief while Plaintiff was on paid administrative leave. Moreover, Plaintiff has offered nothing but his own self-interested supposition to prove his theory that Defendant NIU's legitimate, non-discriminatory reason for the adverse employment action taken against Plaintiff were pretextual. Defendants are entitled to summary judgment on the race and retaliation claims (Counts I - IV).

Prior to the termination of his employment, Plaintiff was placed on paid administrative leave, and given a chance to state his side of the story. Both before and after the termination of his employment, Plaintiff was given access to the grievance process to which he contractually

agreed. Despite his claims to the contrary, Plaintiff received all the process that he was due based on his contract of employment – a level of process that meets all constitutional requirements. Defendants Peters and Nicklas have qualified immunity from these claims, and Defendants are entitled to summary judgment on Plaintiff's due process claims (Counts V and VI).

Finally, Count VII of Plaintiff's FAC, alleging retaliation in violation of the Illinois State Officials and Employees Ethics Act, 5 ILCS 430/1-1 *et seq.,* fails as a matter of law on grounds of sovereign immunity.

## FACTUAL BACKGROUND

Over the course of seven days – from November 2, 2012 to November 9, 2012 – Northern Illinois University received chilling news reports that NIUPD had been accused of withholding potentially exculpatory evidence that could have impacted the criminal prosecution of former NIUPD officer Andrew Rifkin ("Rifkin') in the case of *The People of the State of Illinois v. Andrew Rifkin*, No. 11 CF 762 (Illinois 16th Judicial Circuit, DeKalb County). (SOF ¶ 30.)[2]

On November 2, 2012 two of NIUPD's leaders, Chief of Police and Director of Public Safety Donald Grady ("Plaintiff"), an African-American male, and Lieutenant Kartik Ramakrishnan ("Ramakrishnan"), testified before 16th Judicial Circuit Judge Robbin Stuckert[3] in sanction proceedings on Rifkin's motion to dismiss the criminal sexual assault charges against him for the State's Attorney's failure to turn over exculpatory evidence. (SOF ¶¶ 30-31.)

The hearing did not go well for NIUPD. Plaintiff testified that two students had come to see him to offer information about the allegations against Rifkin. (SOF ¶ 29.) Plaintiff testified

_____

[2] Defendants refer to their Statement of Undisputed Material Facts in their Argument as "SOF ¶__."

[3] Judge Robbin Stuckert now serves as the Chief Judge of the 23rd Judicial Circuit of Illinois.

that one of the students said the encounter between Rifkin and the alleged victim was consensual. (SOF ¶ 32.)  One student testified that they had spoken with Plaintiff for about fifteen minutes. (SOF ¶ 31.)  Plaintiff testified that after speaking with the students, Plaintiff referred them to Ramakrishnan to take their written statements, which he reviewed after they were taken at the police department.  (SOF ¶ 32.)  Plaintiff testified that he did not see the statements as helpful to the defense.  (*Id*.)  Having taken the statements, Ramakrishnan testified that he filed the statements in a file in his office, had failed to make a report regarding the students giving the statements, and failed to turn the statements over to the State's Attorney.  (SOF ¶ 32.)  Plaintiff testified that he did not know about these failures until shortly before the November 2, 2012 hearing.  (SOF ¶ 32.)  Having heard the testimony, however, Judge Stuckert was unequivocal. She found that NIUPD had purposefully withheld potentially exculpatory evidence, a violation of the U.S. Constitution.[4]  (SOF ¶ 33.)  In so doing, Judge Stuckert stated:

> I have been on this bench as the felony judge since 2003 ... I have never in my history in this county had such a clear and obvious *Brady* violation as I've heard today. It is easy for Lieutenant to say "I misplaced, I put in a file." That is not what the evidence was to this Court.  It is clear to me that there was a purposeful hiding of information by this department.

(*Id*.)  Judge Stuckert issued an order directly to Plaintiff and Ramakrishnan:

> I am going to order, however, today that Northern Illinois University Police Department turn over all information, every piece of information that they have regarding this case including reports that have just been most recently generated this week and to cooperate with the State's Attorney's Office in every way to assure this Court as well as the defense that all evidence regarding this matter has been properly provided.

---

[4] A basic constitutional right afforded to criminal defendants is that police and the prosecution are required to turn over all evidence related to the proceeding, including any exculpatory evidence which would be relevant to the case and potentially helpful to the defense. Under the Brady Rule, named for *Brady v. Maryland*, 373 U.S. 83 (1963), prosecutors are required to disclose exculpatory evidence in the government's possession to the accused.

(*Id.*)  Following the November 2 hearing, the DeKalb County State's Attorney issued a press release asserting the NIUPD's actions had "jeopardized Rifkin's defense and the Police Department's credibility." (SOF ¶ 34.)

In a second sanctions hearing in *Rifkin* on the morning of November 9, 2012, Judge Stuckert confirmed her November 2, 2012 finding that "there was a *Brady* violation and that there was exculpatory evidence that was not tendered to [] as required. . . ." (SOF ¶ 35) Based on a statement by State's Attorney Julie Trevarthan that she had not yet received NIUPD's materials, Judge Stuckert ordered that NIUPD's report be turned over to the State's Attorney by the following Tuesday.  (SOF ¶ 36.)

### 1.    Reorganization Of NIUPD

That afternoon, Plaintiff's immediate supervisor, Defendant F. William Nicklas was appointed Acting Director of Police and Public Safety, assuming from Executive Vice President Dr. Edward "Eddie" Williams his oversight of NIUPD. (SOF ¶ 37.)  The following day, November 10, 2012, Nicklas placed Plaintiff and Ramakrishnan on paid administrative leave pending his investigation of the events transpiring in the *Rifkin* case.  Plaintiff received a written notice of paid administrative leave which recited the reasons for the personnel action.  (SOF ¶ 38.)  Nicklas then promoted Darren Mitchell, an African-American male, to the position of Acting Chief of Police.  (SOF ¶ 39.)

### 2.    Pre-Termination Disciplinary Process

Plaintiff was NIU's Chief of Police and Public Safety Director prior to his termination from NIU in February, 2013.  (SOF ¶¶ 3, 18.)  He entered into a "Letter of Agreement" with NIU in 2008 ("Contract"), the term of which ended on June 30, 2014. (SOF ¶ 18.)  Plaintiff's Contract specified at Paragraph 15 that if he were terminated for cause during the course of the

contract term he would be provided with "University procedures and protections available to other employees of similar rank and status." (SOF ¶ 22.)

Upon assuming the position of Acting Director of Public Safety, Defendant Nicklas began an investigation, including requesting the State Police's assistance in making a copy of the hard drives of the computers used by Plaintiff and Ramakrishnan, reviewing a November 9, 2012 written reprimand issued by Plaintiff to Ramakrishnan, discovering that NIUPD still had not turned over the two witness statements to the State's Police, attending the daily "command staff" meetings held by Plaintiff to discuss significant cases, reading the November 2, 2012 and November 9, 2012 transcripts from the *Rifkin* criminal matter, and reviewing the Operations Manual of NIUPD (1998), including its Article 40 pertaining to procedures in investigations, General Order 42.3, which requires that all sworn officers attend to constitutional requirements in the law, and the rights of defendants, General Order 40, which requires that all statements from defendants, witnesses, and victims properly be placed in the investigative file, and General Order 42.4 protocols discussing the proper recording of statements in modules. (SOF ¶ 40.)

Nicklas concluded that constitutional requirements and requirements under the Operations Manual had not been followed in the *Rifkin* prosecution; that Plaintiff had not complied with the requirements in his Letter of Agreement that he should attend to all constitutional requirements, rules, and regulations; and that paragraph 7 of Plaintiff Grady's Letter of Agreement authorized discipline up to and including termination in the event of a serious or intentional failure in this respect. (SOF ¶ 41.)

On November 28, 2012, Nicklas issued a "Written Charges for Discipline/Discharge" to Plaintiff, notifying him of the grounds for which NIU was "considering disciplinary action" against Plaintiff, including the "events and circumstances related to the case of *The People of the*

*State of Illinois vs Rifkin,* Case No. 11CF762, and actions and omissions arising out of and related to that proceeding." (SOF ¶ 42.) The charges stated that "Grady currently has been placed on administrative leave pending further investigation and a decision with respect to an appropriate level of discipline." The Charges identified numerous matters being considered as potential grounds for discipline. (SOF ¶ 43) The Charges also noted that NIU reserved the "right to add additional charges as it completes its investigation." (SOF ¶ 42.)

On January 9, 2013, Nicklas notified Plaintiff in writing that NIU intended to initiate action to terminate his employment based on the matters described in the Statement of Charges issued on November 28, 2012. (SOF ¶ 44.) Nicklas' letter also notified Plaintiff that he had a right to a pre-termination meeting with Nicklas, who at that time was Plaintiff's acting immediate supervisor. (*Id.*)

On January 31, 2013, one day prior to the scheduled pre-termination meeting with Nicklas, Plaintiff wrote a letter to Nicklas objecting to the lack of specificity in the Statement of Charges. His letter asserted that the "allegations as stated merely set forth in general terms your scope of investigation, without stating what, if anything, I specifically did, or failed to do, or to delineate any definitive behavior requiring correction." (SOF ¶ 45.) Plaintiff also asserted in this letter that the pre-termination meeting described in the January 9, 2013 letter would not fulfill "the pre-termination requirements set forth in the United States Constitution applicable to me as a person who has both a liberty and a property interest in any job and who is entitled to notice and an opportunity to be heard before any decision to discipline or terminate is made." (*Id.*) He further asserted that his perception was that NIU's action was based on discriminatory considerations. (*Id.*)

7

A pre-termination meeting occurred between Plaintiff and Nicklas on February 1, 2013.
(*Id.*)  During the meeting Nicklas explained that the purpose of the meeting was: (1) to inform
Plaintiff that NIU had substantially completed its review and consideration of disciplinary action
up to and including discharge against Plaintiff; and (2) to provide Plaintiff with an opportunity to
informally present information Plaintiff believed may be relevant to the decision-making
process. (SOF ¶ 44.)  At the pre-termination meeting, Plaintiff was accompanied by Attorney
Michael Fox, and instructed by Nicklas that counsel's role was not participatory.  (SOF ¶ 45.)
Nicklas restated the charges against Plaintiff and summarized the types of evidence in support of
the charges and then provided Plaintiff with an opportunity "to present additional information
and mitigating circumstances that the University should consider prior to taking disciplinary
action." (*Id.*)  After conferring with his attorney, Plaintiff presented information by having his
prior written responses read into the record, and asked questions for the record.  (*Id.*)  Nicklas
stated at the hearing that any questions or comments would be taken into consideration and may
be addressed in a written response subsequent to the meeting.  (*Id.*)

On February 3, 2013, Plaintiff sent a lengthy letter to Nicklas questioning and opposing
what he perceived to be racially discriminatory and retaliatory treatment of him.  (SOF ¶ 46.)  He
specifically asserted that there were disparities in the handling of his discipline as compared to
the handling of specific investigations and separations involving former administrators John
Gordon and Robert Albanese, as well as investigations of numerous NIU employees in two
alleged misappropriation schemes known as the "Coffee Fund" and "Redemption Fund."  (*Id.*)

Nicklas, however, was not a decision-maker in the Gordon, Albanese, and "Coffee Fund"
personnel matters, which involved alleged misappropriation or theft of University resources.

(SOF ¶ 47.) Those individuals were supervised by Eddie Williams, and Nicklas had no visibility to the personnel matters or any separation agreements. (SOF ¶ 47.)

On February 19, 2013 Nicklas sent Plaintiff a termination letter dated February 19, 2013, notifying Plaintiff that his employment was terminated for his actions related to the Court's finding of a *Brady* violation in the *Rifkin* criminal matter. (SOF ¶ 48.) The letter from Nicklas noted the information he reviewed to make the determination and his finding that he "did not find credible [Plaintiff's] claim that [he was] not involved in the purposeful withholding of exculpatory evidence." (*Id.*) Nicklas further wrote:

> Like Judge Stuckert, I believe the testimony at the hearing supports the conclusion there was a purposeful withholding and non-disclosure of the exculpatory evidence, and I further find that you, acting in your capacity as Chief of Police and Public Safety, hold responsibility either for the purposeful withholding and nondisclosure of Brady evidence, or the negligent nondisclosure of Brady evidence by individuals under your supervision.

(*Id.*) Nicklas' termination letter stated that even if Plaintiff's denial of direct knowledge of related to the non-disclosure of exculpatory evidence in the *Rifkin* case were true, "at a minimum, [his] failure to supervise departmental personnel in this important case represents sufficient cause for dismissal." Nicklas' letter also stated that Plaintiff's "credibility and the credibility of the Department [had] been compromised to the extent the University believes termination is appropriate." (*Id.*) The letter provided Plaintiff with notice of post-termination procedures, referring Plaintiff to Article 11 of the Constitution and Bylaws of Northern Illinois University (the "Grievance Procedure").

### 3. Post-Termination Grievance

As a member of NIU's Supportive Professional Staff ("SPS"), the internal processes applicable to Plaintiff's employment were set forth in Article 11 of NIU's Constitution and Bylaws ("Article 11.") (SOF ¶¶ 3, 49 - 57.) Article 11 was drafted and adopted by the SPS

themselves as part of shared governance at NIU, and sets forth general procedures applicable to "provide an opportunity for a faculty or staff member to seek resolution of allegations of unfair treatment in the workplace by other members of the University faculty or staff." (SOF ¶ 48.) Moreover, the text of Article 11 reflects and anticipated termination of employment merely for "cause" (as opposed to "just cause"). (SOF ¶ 56.) The Grievance Procedures enumerate three progressive steps, including Step I, in which the grievance is brought to the named respondent who attempts to resolve and/or provides a response to the allegations; Step II, in which the grievant submits a written appeal to the next person upward in the organization chain from the named respondent; and Step III, in which the grievant can initiate a formal grievance at the University level by requesting a hearing. (SOF ¶ 50.)

On March 26, 2013, Plaintiff submitted his formal grievance challenging his termination, and asserted that he was dismissed from his position "without cause." (SOF ¶ 58.) His grievance form stated that his grievance was brought against Nicklas and "Senior Administrators and/or spokespersons" who were unnamed. He also asserted that he was "subjected to a process and subsequent discipline that is disparate and comparatively harsher than the processes or levels of discipline to which non-minority employees have been subjected with regard to suspensions, investigations, terminations, and relative to public statements that have been made about me by University administrators and/or spokespersons." (*Id.*) Plaintiff requested "immediate reinstatement with back pay" along with reimbursement of attorney's fees incurred and a "public apology." (*Id.*) Plaintiff's Step I grievance was denied and Nicklas sent Plaintiff a letter dated April 17, 2013, stating as the basis for denial that the "decision to discharge was based, among other things, on your conduct and that of the officers you supervised with respect to the matter of

10

*The People of the State of Illinois vs. Andrew Rifkin,* and failures to make appropriate internal and external disclosure related to the same . . . ." (SOF ¶ 61.)

The parties entered into a stipulation to exclude Step II of the grievance process, advancing Plaintiff's grievance to Step III. (SOF ¶ 62.) On May 29, 2013, Plaintiff submitted a Request for a Grievance Committee Hearing (Step III) to Dr. Alan Rosenbaum, Executive Secretary of the University Council ("Rosenbaum"). (*Id.*) Plaintiff's Step III Grievance expressly provided that the persons or offices contributing to the adverse situation described in the grievance were Nicklas and Dr. John Peters, President of NIU; Kathy Buettner, V.P. Media Relations of NIU; Dr. Steve Cunningham, V.P. Human Resources Services of NIU; and Jerry Blakemore, NIU's General Counsel. (SOF ¶ 62.) Plaintiff again asserted that he was removed from his position without cause and that he had been subjected to disparate and harsher processes and levels of discipline than non-minority employees. (*Id.*)

Rosenbaum testified in his deposition that because of Cunningham being identified in the grievance, Rosenbaum assumed the administrative processes of the grievance that Cunningham's department would normally handle in facilitating the grievance. (SOF ¶ 63.) In that regard, Rosenbaum initiated contact with, convened, and met with the members of the Grievance Committee to apprise them of their duties generally, including instructions that they should review and follow the Grievance Procedures provided for in Article 11 of NIU's Constitution and By-Laws. (*Id.*) He instructed the Grievance Committee that they should make a determination on the merits of the grievance. (*Id.*) He also distributed to each member of the Grievance Committee packets of the written submissions of Plaintiff, Nicklas, and the other individual respondents. (*Id.*)

Article 11 Grievance Procedures do not automatically afford a hearing to an SPS employee whose employment is terminated for cause. Step III of the process provides that the Grievance Committee must grant the request for a hearing if it "determines there are sufficient grounds and if the grievance issues have not been adequately resolved." (SOF ¶ 52.) It also provides that the Grievance Committee can deny the request for the hearing in which case the denial "concludes the grievance process." (*Id.*)

Plaintiff's grievance submission was provided to members of the Grievance Committee, consisting of Defendants Debra Boughton, Katherine Little, Randi Napientek, Jonathon Ostenburg, and Michael Stang, SPS employees who served as volunteers on the grievance panel without compensation. (SOF ¶ 64, 68 - 69.) The parties' voluminous and sometimes overlapping submissions to the Grievance Committee constituted some 527 pages of submissions (by each party), transcripts, communications, and NIUPD procedures, of which Plaintiff's submission constituted over 300 pages. (SOF ¶ 68.) Each member of the volunteer Grievance Committee read the submission by Plaintiff, Nicklas, Buettner, Cunningham, Peters, and Blakemore prior to the Committee convening its meeting on July 11, 2013. (SOF ¶ 69.)

The members of the Grievance Committee met on July 11, 2013, and after discussion about the matter, they voted to deny Plaintiff's hearing request. (SOF ¶ 70.) The Grievance Committee did not make a referral of the Grievance to another individual or individuals. (SOF ¶ 71.) The Committee documented its actions in a brief response to the six questions that Boughton sent to Rosenbaum after the meeting concluded. (SOF ¶ 72.) Specifically, Boughton prepared an e-mail to Rosenbaum on July 12, 2013 that stated that there were: "[n]o questions from the committee about the grievance process, . . . [n]o questions from the committee about the presented materials, . . . [n]o additional information was requested or required to make a

recommendation, . . . [n]o step was incorrectly skipped, however the committee voted to unanimously to remove the following individuals from the grievance committee hearing request: Dr. Peters, Kathy Buettner, Steven Cunningham and Jerry Blakemore since these individuals were not named in step one of the grievance process, . . . [t]he committee voted unanimously to deny the request for a hearing." (SOF ¶ 72.) Pursuant to Article 11.5.3.2(g), no additional information beyond the denial of the grievance was required to be communicated to Plaintiff. (SOF ¶ 52.)

Because there was no hearing granted under Article 11.5.3.2, no findings and recommendations of the Committee were prepared under Article 11.5.3.3 or reported to the President of the University for further review under Article 11.5.3.4. (SOF ¶¶ 75 - 77.) Douglas Baker, who became President of NIU during the fourth week of June 2013, testified that he did not recall receiving any such findings and recommendations, and took no action on Plaintiff's grievance. (SOF ¶ 74.)

Plaintiff was informed of the Grievance Committee's decision and that the decision concluded NIU's action on his grievance. (SOF ¶ 79.) There was no further action taken by NIU with respect to Plaintiff's grievance in any way.

## ARGUMENT

### I. PLAINTIFF'S RACE DISCRIMINATION CLAIMS FAIL ON THE UNDISPUTED FACTS AND AS A MATTER OF LAW

Plaintiff's race discrimination claims brought under Title VII and 42 U.S.C. §1981 are analyzed together because they both require Plaintiff to prove the same *prima facie* elements.[5]

---

[5] The standard for summary judgment is well-known to the Court. *See Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012). To prevail, a movant need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).

*Hobbs v. City of Chicago*, 573 F.3d 454, 460 n.1 (7th Cir. 2009). To sustain a claim, Plaintiff must set forth evidence "that would permit a reasonable factfinder to conclude that [his] race . . . caused" NIU's alleged adverse employment actions against him. *Ortiz v. Werner Enters., Inc.*, No. 15-2574, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016); *see also Cole v. Bd. of Trustees of N. Ill. Univ.*, No. 15-2305, 2016 WL 5394654, at *8 (7th Cir. Sept. 27, 2016) (explaining that, on summary judgment, "the critical question . . . is simply whether a reasonable jury could infer prohibited discrimination") (internal quotations and citations omitted).[6]

The *McDonnell Douglas* burden shifting approach remains a permissible way to assess evidence of discrimination under Title VII. *Ortiz*, 2016 WL 4411434, at *5; *see also Knapp v. Evergos, Inc.*, 15-CV-754, 2016 WL 4720026, at *6 (N.D. Ill. Sept. 9, 2016) (Feinerman, J.) ("*McDonnell Douglas* identifies one pattern [for determining whether the evidence] enable[s] a reasonable juror to find discrimination[.]"); *Moore-Fotso v. Bd. of Edu. of the City of Chicago*, No. 12-CV-10419, 2016 WL 5476235, at *14 (N.D. Ill. Sept. 29, 2016) (Dow, J.) (same). Indeed, since *Ortiz*, courts in this district have considered whether the evidence meets the *McDonnell Douglas* standard and, if not, whether a reasonable jury could nonetheless find discrimination. *Knapp*, 2016 WL 4720026, at *6; *Moore-Fotso*, 2016 WL 5476235, at *14. As a practical matter, however, failure to set forth sufficient evidence under *McDonnell Douglas* dooms Plaintiff's claims.[7]

---

[6] In *Ortiz*, the Seventh Circuit recently disavowed the direct-indirect evidence paradigm for Title VII claims on summary judgment. *Ortiz*, 2016 WL 4411434, at *4. The Seventh Circuit explained that "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* at *4-*5; *see also Cole*, 2016 WL 5394654, at *8 ("We look past the ossified direct/indirect paradigm[.]")(internal quotations and citations omitted).

[7] A plaintiff need only resort to the *McDonnell Douglas* test where, as here, there is no direct evidence of discrimination. Under such circumstances, all evidence is considered under the

Accordingly, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was meeting NIU's legitimate expectations; (3) he suffered an adverse action; and (4) NIU treated other similarly-situated employees who were not African-American more favorably. *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). Even if Plaintiff can make these showings, NIU then has the opportunity to provide a "legitimate, nondiscriminatory reason for terminating him," in which case the burden shifts back to Plaintiff to provide evidence establishing that NIU's reason is just a pretext for discrimination. *Hudgens v. Wexler & Wexler*, 391 F. Supp. 2d 634, 644 (N.D. Ill. 2005). "Despite these shifting burdens of production, the ultimate burden of persuasion always remains with the plaintiff." *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Here, Plaintiff has failed to adduce evidence that would allow a reasonable jury to find NIU terminated him because he is African-American. Plaintiff has presented no direct evidence of discrimination.[8] Moreover, considering all of the evidence at issue in this case, the undisputed evidence shows that Plaintiff cannot make a *prima facie* showing of discrimination under the *McDonnell Douglas* standard or establish pretext.

### A.     Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination

Plaintiff cannot establish a *prima facie* case of race discrimination because he cannot: (1) demonstrate that he was meeting NIU's legitimate expectations; or (2) identify a similarly

---

*McDonnell Douglas* test. Failure under the *McDonnell Douglas* test, therefore, necessarily precludes a reasonable jury from finding discrimination.

[8] Direct evidence is essentially "an admission by the decision-maker that his actions were based upon the prohibited animus." *E.g., Harper v. Fulton Cty., Ill.*, 748 F.3d 761, 765 (7th Cir. 2014).

situated employee who NIU treated more favorably than him. Accordingly, his race discrimination claims (Counts I and III) fail as a matter of law.

### 1. Plaintiff Cannot Demonstrate That He Was Meeting NIU's Legitimate Expectations

Plaintiff cannot show that, as NIU's police chief, he met NIU's legitimate performance expectations. In analyzing this issue, Plaintiff's evaluation of his own performance is insufficient. *Watts v. SBC Servs., Inc.*, No. 05-CV-3111, 2006 WL 2224054, at *5 (N.D. Ill. July 31, 2006) (plaintiff's "own perception of [his] job performance and behavior is insufficient to raise a genuine issue of fact whether [he] was meeting [employer's] legitimate job expectations").

On November 2, 2012, both Plaintiff and his direct report, Lt. Kartik Ramakrishnan, testified before Judge Robin Stuckert in the *Rifkin* criminal prosecution regarding their interviews of two witnesses who offered potentially exculpatory information regarding Andrew Rifkin, and their reasons for why NIUPD Ramakrishnan failed to turn these witness statements over to the State's Attorney. Judge Stuckert found neither Plaintiff nor Ramakrishnan credible, and found that NIUPD had committed as "clear and obvious a *Brady* violation" as Judge Stuckert had ever seen. (SOF ¶ 33.) The Judge then ordered NIUPD to turn over all exculpatory information to the State's Attorney. (*Id.*) Shortly thereafter, the DeKalb County State's Attorney publicly declared that the NIUPD's violation had "jeopardized Rifkin's defense and the Police Department's credibility." (SOF ¶ 34.)

Judge Stuckert resumed the *Rifkin* sanctions hearing on November 9, 2012, and learned that NIUPD had not complied with her order of November 2, 2012. (SOF ¶ 35.) Judge Stuckert ordered NIUPD's compliance by a date certain. The Rifkin hearings were publicized in the media. That afternoon, Defendant Peters immediately appointed a member of his cabinet,

Defendant Nicklas, Acting Director of Public Safety with oversight of NIUPD. (SOF ¶ 37.) Nicklas placed Plaintiff and Ramakrishnan on paid administrative leave pending an investigation. (SOF ¶ 38.) Upon Nicklas' ensuing investigation, he learned that the witness statements were still in the possession of NIUPD. (SOF ¶ 40.) To make matters worse, Nicklas discovered that only after the *Rifkin* criminal hearing on November 9, 2013, Plaintiff created a suspicious written disciplinary action for Ramakrishnan. (*Id.*) Nicklas met with NIUPD personnel, reviewed NIUPD's Operations Manual, and reviewed transcripts of the *Rifkin* criminal hearings. Nicklas then took steps to terminate the employment of both Plaintiff and Ramakrishnan. (SOF ¶ 40 - 42.)

Plaintiff's performance would have failed to meet NIU's legitimate expectations for its police chief had Plaintiff's failure been limited to substandard supervision of his officers in the NIUPD. However, the evidence shows more than that. Nicklas learned that Plaintiff played a direct role in the *Brady* violation. (SOF ¶ 29.) He was the first to interview the witnesses who provided evidence potentially exculpatory of Rifkin. (SOF ¶ 32.) As a police officer who interviewed the witnesses, Plaintiff failed to ensure that their statements and a police report documenting those statements were turned over to the State's Attorney. As Chief of Police he failed to uphold the U.S. Constitution and to supervise the Department, including the direct report who he assigned to take written witness statements, to create a written report, and to turn the witness statements and a corresponding report over to the State's Attorney.

By any reasonable measure, Plaintiff did not meet the legitimate expectations of NIU for its chief of police.[9]

---

[9] Indeed, Rifkin was a sworn officer of the NIUPD. Ramakrishnan himself had suggested to Plaintiff that NIUPD should not conduct the criminal investigation of Rifkin as it was outside NIUPD's jurisdiction. (SOF ¶ 29.) Plaintiff, however, interviewed the witnesses and turned

**2.    Plaintiff Cannot Identify A Single Similarly-Situated Employee Who Was Treated More Favorably Than He Was Treated**

Plaintiff's discrimination claims also fail because he has not identified any similarly-situated, non-African-American employee whom NIU treated more favorably than Plaintiff.  To qualify as "similarly-situated," a fellow employee must be "directly comparable to the plaintiff in all material respects."  *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 395 (7th Cir. 2010); *Walker v. Bd. Of Regents of the Univ. of Wis. Sys.*, 410 F.3d 387, 397 (7th Cir. 2005).  In particular, Plaintiff must identify a non-African-American employee treated more favorably by the same decision-maker who mistreated Plaintiff.  *Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826-27 (7th Cir. 2008); *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004).  The rationale behind this rule is that "[d]ifferent decision-makers may rely on different factors when deciding whether, and how severely, to discipline an employee."  *Ellis*, 523 F.3d at 826; *see also Little*, 369 F.3d at 1012 (decision by different decision-maker "sheds no light on the decision to discharge" plaintiff).

Here, Plaintiff has identified Robert Albanese ("Albanese"), John Gordon ("Gordon"), and alleged participants in an investigation known as the "Coffee Fund" as his alleged comparators.  (SOF ¶ 46.)  These individuals were investigated for alleged misappropriation of university property or funds.  (SOF ¶ 47.)  Albanese and Gordon, in particular, were administrators of Northern Illinois University who received separation agreements and pay upon their separation.  (*Id*.)  The evidence is uncontroverted that the decision-maker in these personnel matters was Dr. Edward Williams.  Nicklas, the sole decision-maker in the adverse employment action taken against Plaintiff, was not a decision-maker in the Albanese, Gordon, or Coffee Fund

---

them over to Ramakrishnan to take formal statements and write a report, telling Ramakrishnan that there was "nothing probative" about the two witnesses. (*Id*.)

personnel matters, and had neither involvement in crafting nor visibility to the terms of the Gordon and Albanese separations. (*Id.*) Accordingly, Plaintiff fails to identify comparators who received preferential treatment. *Ellis*, 523 F.3d at 826; *see also Little*, 369 F.3d at 1012.[10]

Further, and equally as dispositive, Plaintiff cannot show that Albanese and Gordon "engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Johnson v. City of Chicago Board of Education*, 142 F. Supp.3d 675, 691 (N.D. Ill. 2015); *see also Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) ("[T]he comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories."). The evidence of Record establishes that members of the Grievance Committee convened to consider Plaintiff's post-termination grievance concluded that Plaintiff's generalized allegations lacked specifics, and one Grievance Committee member recalled that he concluded that Plaintiff's attempted comparison of the "Coffee Fund" matter to his own was not convincing. (SOF ¶ 71.) *See Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012) ("[T]he critical question is whether they engaged in conduct of comparable seriousness."). Plaintiff participated in the perpetration of a Constitutional violation soiling a criminal investigation and the rights of a criminal defendant. As NIU's chief law enforcement officer, his conduct contributed to jeopardizing the liberty of a person subject to criminal prosecution was inexcusable. Moreover, as Chief of Police, Plaintiff occupied a higher and more singular

---

[10] It may be noted that Ramakrishnan, who is not African-American, also was placed on paid administrative leave pending investigation of his involvement in the "*Brady* violation," and Nicklas thereafter took steps to terminate Ramakrishnan's employment. (SOF ¶ 38.) *See Cole*, 2016 WL 5394654, at *9 ("To assess whether [plaintiff]'s demotion was motivated by race, it is hard to imagine a better comparator than [a co-worker] who was demoted at the same time by the same person with the same offered justification.").

19

position of authority within the university than Albanese (a mid-level administrative VP) and Gordon (who reported to Albanese).

In short, Plaintiff cannot show that he was treated less favorably than any similarly-situated employee. Summary judgment is therefore proper as to his claims.

### B.     Plaintiff Cannot Demonstrate Pretext

Even if Plaintiff could establish a *prima facie* case of race discrimination (and he cannot as a matter of law), Plaintiff's claims fail because he cannot show a genuine issue of material fact that NIU's reasons for terminating his employment were a pretext for race discrimination. Plaintiff's only evidence of alleged pretext is his self-serving belief that NIU's actions were discriminatory, which is insufficient to create a genuine issue of material fact as a matter of law. *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823-24 (7th Cir. 2006) (plaintiff must show that the employer "lied about its reasons for firing him — not that [the employer] was wrong for firing him for the reasons it gave"); *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323, 325 (7th Cir. 2001) (so long as the employer "honestly believes the reason it offers," the court will not sit as a "superpersonnel department"). "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Coleman*, 667 F.3d at 852 (quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010)).

There is no evidence in the Record that NIU's explanation for its investigation and termination of Plaintiff was a lie or pretext for race discrimination. NIU's disciplinary action was prompted by a Judge's determination that the NIUPD – under Plaintiff's command and with Plaintiff's involvement – had committed a *Brady* violation and jeopardized the legitimacy of the *Rifkin* criminal prosecution, and had failed to turn over exculpatory materials even after having

been ordered by that Judge to do so. The actions taken by Peters to place NIUPD under Nicklas' supervision, and the actions taken by Nicklas in placing Plaintiff and Ramakrishnan on paid administrative leave pending an investigation that led to Nicklas taking steps to terminate the employment of each of them, took place immediately after the events occurring at the November 9, 2012 hearing in *The People of the State of Illinois v. Andrew Rifkin*.

Any self-serving claim by Plaintiff that Defendants have not established a legitimate, non-discriminatory reason for adverse employment actions against him because Ramakrishnan committed the *Brady* violation, not Plaintiff, also fails as a matter of law. So long as NIU "honestly believes the reason it offers" for terminating Plaintiff, the Court will not sit as a "superpersonnel department" and disturb that decision. *Wade*, 243 F.3d at 323; *Coleman*, 667 F.3d at 852. Here, there is no evidence to suggest that NIU did not honestly believe that Plaintiff was personally involved in interviewing the *Rifkin* witnesses, and in failing to supervise his Department to ensure that witness statements and related police report *for witnesses Plaintiff interviewed* were turned over to the State's Attorney, as required by law. *See Shelby v. Rockford Sch. Dist. #205*, No. 96-CV-50396, 2000 WL 28257, at *2 (N.D. Ill. Jan. 7, 2000) ("summary judgment is warranted if defendants offer evidence that race was not a factor in their decisions and plaintiffs only offer their unsupported conclusory statements.") (citing *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir. 1994)).

Accordingly, because Plaintiff cannot establish pretext, summary judgment should be granted on Plaintiff's discrimination claims.

## II.     PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW[11]

Plaintiff's retaliation claims under Title VII and 42 U.S.C. § 1981 (Counts II and IV) likewise fail as a matter of law.  The Seventh Circuit has stated that a plaintiff may establish a *prima facie* case of retaliation by direct or indirect proof.  *Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522*, 657 F.3d 595, 601-02 (7th Cir. 2011).  Under the direct method, a plaintiff must establish that he: (1) engaged in statutorily protected activity, (2) suffered a materially adverse action, and (3) a causal connection exists between the two.  *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).  Under the indirect method, a plaintiff must prove that he: (1) engaged in statutorily protected activity; (2) suffered a materially adverse action; (3) met NIU's legitimate expectations, and (4) was treated less favorably than similarly situated employees who did not engage in protected activity.  *Argyropoulos*, 539 F.3d at 733.  Regardless of whether he can establish a *prima facie* case, Plaintiff also must establish that NIU's stated reasons for its actions were a pretext for retaliation in order to overcome summary judgment.  *Id.* at 736 n.6.

While the Seventh Circuit's recent decision in *Ortiz* involved only a discrimination claim and not a retaliation claim, its instruction that all "[e]vidence must be considered as whole," whether it is characterized as "direct" or "indirect" evidence, appears to apply to retaliation claims just the same.  *Ortiz*, 2016 WL 4411434, *4, *5; *see also Jenkins v. White Castle Mgmt. Co.*, No. 12-CV-7273, 2016 WL 5476234, at *6 (N.D. Ill. Sept. 29, 2016) (noting *Ortiz*'s directive in assessing retaliation claim under Fair Labor Standards Act); *Moore-Fotso*, 2016 WL 5476235, at *18 (articulating the standard for proving retaliation under the American With

---

[11] Plaintiff's retaliation claims brought under Title VII and 42 U.S.C. §1981 are analyzed together because they both require Plaintiff to prove the same *prima facie* elements.  *See Davis v. Time Warner Cable*, 651 F.3d 664, 671-72 (7th Cir. 2011) (section 1981 retaliation claims are analyzed in the same way as claims under Title VII).

Disabilities Act only as what would be characterized as the "direct" method, but considering all evidence in assessing the claim).

### A.     Plaintiff Cannot Make A Prima Facie Case Of Retaliation

Plaintiff cannot survive summary judgment on his retaliation claims under *Dickerson* or *Ortiz*. All relevant evidence demonstrates that no reasonable jury could find that Plaintiff's complaining of racial discrimination caused NIU to place him on paid leave pending investigation, or later terminate his employment.

### 1.     Plaintiff Cannot Establish A Causal Connection Between Alleged Protected Activity And Adverse Employment Action By Any Defendant

In his FAC, Plaintiff claims that he engaged in activity protected from retaliation under Title VII and § 1981:

> …[i]ncluding but not limited to repeatedly, both orally and in writing, reporting and opposing unlawful racial discrimination against him and unlawful retaliation for doing so to NIU officials, and complaining of such discrimination and retaliation in his written grievance submissions.

(SOF ¶ 17.)  However, by his own admission Plaintiff made no such complaints until after Nicklas placed Plaintiff on paid administrative leave.  (SOF ¶ 45.)  In fact, Plaintiff first complained of discrimination only *after* NIU had sent him the disciplinary charges.  (SOF ¶ 45.)  Temporally, there is simply no basis for Plaintiff's allegation that Defendants NIU, Peters and Nicklas engaged in retaliation by "suspending" Plaintiff.  (SOF ¶ 17.)  These undisputed facts defeat any causal connection between Plaintiff's complaint of discrimination and the commencement of adverse employment actions by Nicklas and NIU.  *See Univ. of Texas v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (protected behavior must be the "but for" cause of employer's adverse action); *Moore-Fotso*, 2016 WL 5476235, at *19 (no causal connection where adverse actions pre-dated plaintiff's engaging in protected behavior).

Further, the record contains no evidence showing a causal connection between Plaintiff's complaints about race discrimination in his grievance and the termination of his employment. Rather, Nicklas' investigation of Plaintiff's involvement in the emergent *Rifkin* matter and his supervision of NIUPD, which led to the termination of his employment, was initiated in direct response to the criminal court hearing in which Plaintiff testified, and the Judge's finding that the NIUPD had committed a *Brady* violation. (SOF ¶¶ 37-38.) The undisputed evidence establishes that by participating directly in the circumstances of a *Brady* violation by interviewing witnesses, giving instruction for their statements to be taken and a report made, failing to ensure this documentation was turned over to the State's Attorney, failing to comply with Judge Stuckert's orders, and failing to supervise his Department, Plaintiff failed to meet NIU's legitimate expectations. (SOF ¶ 37.) Plaintiff's role as Chief of Police at NIU is as unique as the Constitutional violation threatening the liberty of another that resulted in the termination of his employment. Plaintiff cannot identify any similarly-situated employee who was treated more favorably. *Brown v. Illinois Dept. of Nat. Res.*, 499 F.3d 675, 684 (7th Cir. 2007) (plaintiff's burden is to identify a similarly-situated employee not engaged in protected activity who was not subject to adverse action).

Moreover, Plaintiff has utterly failed to establish the involvement of Defendant Peters or the Board of Trustees of NIU in any adverse action taken against Plaintiff. (SOF ¶¶ 58-64.) *See Falk v. Cook Cty. Sheriff's Office*, No. 93 C 3842 WL 498166, at *2 (N.D. Ill. Nov. 30, 1993) (explaining that a violation of 42 U.S.C. § 1983 must "connect the violation to the named defendants"); *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, n.2 (7th Cir. 2006) ("The only difference between a claim under Title VII and a claim under § 1983 is who can be named as a

defendant in the action."); *Malarca v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000) (the same analysis applies to claims under both Title VII and § 1983).

### 2. Plaintiff Cannot Establish Pretext

Plaintiff cannot establish that the reasons for the termination of his employment were a pretext for retaliation. Plaintiff's only evidence of pretext is his self-serving belief that NIU's actions were retaliatory, which is insufficient as a matter of law. *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (citations omitted). In order to survive summary judgment, Plaintiff must offer evidence to establish a genuine issue of materials fact that these reasons are "a dishonest explanation, a lie rather than an oddity or an error." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002).

Plaintiff can point to no evidence even suggesting that NIU's stated reasons – Plaintiff's violation of his personal and professional ethical duties by both his personal and supervisory roles in committing what Judge Stuckert found to be a *Brady* violation in connection with the *Rifkin* litigation, among related errors and omissions – are false or dishonest, let alone that the real reason was his complaining about racial discrimination. *See Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir. 2002) ("[W]e are not concerned with the correctness or desirability of reasons offered for employment decisions, but rather . . . whether the employer honestly believes in the reasons it offers."). Therefore, summary judgment is warranted on Plaintiff's retaliation claims (Counts II and IV).

### 3. Pretext Cannot Be Established When The Adverse Action Was Taken In Good Faith

In order to show pretext Plaintiff would also need to present evidence that calls into question NIU's belief that he violated his duty to the University. *See Pugh v. City of Attica, Indiana*, 259 F.3d 619, 629 (7th Cir. 2001) (explaining that in a circumstantial evidence case, to

show pretext a plaintiff must provide evidence that "casts doubt on the veracity" of the employer's belief in the plaintiff's wrongdoing). Courts will not second-guess an employer's employment decision in a Title VII claim if the employer acted in good faith and with an honest belief. *Boston v. U.S. Steel Corp.*, 816 F.3d 455 (7th Cir. 2016). Furthermore, the Seventh Circuit "has long championed an employer's right to make its own business decisions, even if they are wrong or bad." *Id.* (quoting *Green v. Nat'l Steel Corp., Midwest Division*, 197 F.3d 894, 899 (7th Cir. 1999)). Plaintiff still fails to show pretext as he fails to provide evidence that NIU failed to act in good faith with an honest belief that Plaintiff had failed to meet NIU's legitimate expectations by participating in what a sitting judge found to be a *Brady* violation, failing to properly supervise his department, and failing to obey the orders of Judge Stuckert.

The evidence clearly shows that Plaintiff violated his duty to the university when he committed a *Brady* violation in connection with the *Rifkin* case. Plaintiff cannot show that he did not commit such a violation nor can he show that NIU did not make its decision in good faith based on an honest belief that Plaintiff committed this violation . . . Plaintiff and Ramakrishnan both testified in the Rifkin matter as to their involvement in interviewing witnesses and not ensuring that witness statements and a report of those statements were turned over to the State's Attorney. (SOF ¶ 31.) Judge Robbin Stuckert heard their testimony and found from the bench that NIUPD had committed a Brady violation impairing the Constitutional rights of a criminal defendant (SOF ¶ 31.) Despite being ordered by the Court on November 2, 2012 and November 9, 2012 to turn over exculpatory material to the State's Attorney, Plaintiff simply failed to comply or ensure compliance with these court orders. (SOF ¶ 35.) Nicklas' own investigation revealed failures by Plaintiff including failure to prepare and turn over to the State's Attorney, or have prepared and turned over to the State's Attorney, witness statements and a report for

witnesses he himself had interviewed, failure to comply with NIUPD General Orders in this regard, the creation of a suspicious written reprimand for Ramakrishnan on November 9, 2012, and the failure to comply with Judge Stuckert's orders. (SOF ¶ 41.) Plaintiff has nothing to show but his own speculation of pretext, which fails as a matter of law.

## III. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS AGAINST PETERS AND NICKLAS FAIL

There is no dispute as to the following: (1) Plaintiff was an SPS employee (SOF ¶ 3); (2) through his employment contract, Plaintiff agreed to be bound by NIU termination procedures applicable to other SPS employees (SOF ¶ 18-23); and (3) those SPS procedures were followed by the Grievance Committee. (SOF ¶ 80.)

### A. Plaintiff Waived Any Argument That He Was Entitled To More Process Than He Received Under Article 11

Plaintiff's Letter of Agreement provides that any termination for cause would be addressed pursuant to University procedures and protections under Article 11 available to other employees under similar rank and status (here, those classified as SPS employees). By agreeing to accept Article 11 in the event he were to be terminated, Plaintiff waived any different or supplemental termination proceedings. It is well-established a plaintiff can "waive" due process "entitlements." *Batagiannis v. West Lafayette Community School Corp.*, 454 F.3d 738, 741 (7th Cir. 2006) (stating "the Court has never doubted the ability of individual employees to waive entitlements or negotiate in advance the details of the hearings they will receive"). By explicitly and unequivocally agreeing to accept Article 11 as the applicable procedure to review his termination, Plaintiff waived any different or supplemental termination proceedings.

### B. Plaintiff Was Provided All The Process He Was Due

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

27

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). As explained below, NIU provided Plaintiff with such constitutionally sufficient due process. To sustain a claim for violation of procedural due process, Plaintiff must demonstrate "(1) he had a constitutionally protected property interest; (2) he suffered a loss of that interest amounting to a deprivation; and that (3) the deprivation occurred without the adequate protection of due process of law." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007).

### 1. Pre-Termination Process

Assuming Plaintiff had a protected property interest and that he suffered a loss of that interest, he was entitled to some amount of constitutional due process before deprivation. This pre-termination process includes: 1) oral or written notice of the charges, 2) an explanation of the evidence, and 3) an opportunity to tell his side of the story. *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 803-804 (7th Cir. 2000). "'[T]his procedure need not be elaborate and can be satisfied with less than a full evidentiary hearing.'" *Buttitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993) (quoting *Smith v. Town of Eaton*, 910 F.2d 1469, 1472 (7th Cir. 1990), *cert. denied*, 499 U.S. 962 (1991)).

The undisputed material facts establish that Plaintiff received each one of these protections. As noted, NIU issued Plaintiff "Written Charges for Discipline/Discharge," notifying him of the grounds for NIU disciplinary action, including the "events and circumstances related to the case of *The People of the State of Illinois vs. Andrew Rifkin*, Case No. 11CF762, and actions and omissions arising out of and related to that proceeding." (SOF ¶ 42.) The charges stated that "Plaintiff currently has been placed on administrative leave pending further investigation and a decision with respect to an appropriate level of discipline." (*Id.*)

On January 9, 2013, Nicklas notified Grady in writing that NIU intended to initiate action to terminate his employment based on the matters described in the Statement of Charges issued

on November 28, 2012. Nicklas' letter also notified Plaintiff that he had a right to a pre-termination meeting with Nicklas, who by that time was Plaintiff's acting immediate supervisor.

In anticipation of the pre-termination meeting with Nicklas, on January 31, 2013, Plaintiff made a written submission to Nicklas responding to the Charges. Plaintiff's submission disclaimed responsibility for the misconduct of his Department, and instead pointed out that Ramakrishnan, while under oath, clearly stated that he had made the mistake leading to the *Brady* violation, and that Ramakrishnan had accepted responsibility for the failure of the NIUPD to provide the statements to the State's Attorney in a timely manner. Plaintiff also pointed out that he had disciplined Ramakrishnan for those procedural violations and that the Court had not found that Plaintiff had acted improperly in any way. He also asserted he had given instruction to Ramakrishnan to turn over the information to the State's Attorney and that he was unaware that his instructions were not followed until days before the hearing before Judge Stuckert.

The pre-termination meeting between Plaintiff and Nicklas occurred on February 1, 2013. Nicklas told Plaintiff NIU had substantially completed its review and consideration of disciplinary action up to and including discharge against Plaintiff; and provide Plaintiff with an opportunity to informally present information or mitigating circumstances prior to possible disciplinary action. Nicklas restated the Charges against Plaintiff and summarized the types of evidence in support of the charges and then provided Plaintiff with an opportunity to present information. Plaintiff presented information by having his written submission of January 31, 2013, read into the record of that meeting.

On February 19, 2013, Nicklas provided Plaintiff with a notice of termination, writing that NIU had made the decision to terminate Plaintiff's employment based on the matters set

forth in the November 28, 2012 Charges and the results of Nicklas' investigation, detailed in the February 19, 2013 letter.

### 2. Post-Termination Process

Plaintiff received a further opportunity to explain his side of the story through the Article 11 grievance process. First, following Step I of the grievance process, Plaintiff submitted his formal grievance challenging his termination, and asserting that he was dismissed from his position "without cause." His grievance form was comprehensive of all his claims. Plaintiff's Step I grievance was denied, and Nicklas sent Plaintiff a letter dated April 17, 2013, stating as the basis for denial that the "decision to discharge was based, among other things, on your conduct and that of the officers you supervised with respect to the matter of *The People of the State of Illinois vs. Andrew Rifkin*, and failures to make appropriate internal and external disclosure related to the same."

Each of the Grievance Committee Defendants acted with integrity and fairly and thoroughly considered all the materials the parties to the grievance submitted to them. Members of the Grievance Committee were convinced that the University had sufficiently shown cause for the termination of Plaintiff's employment, no other information that would assist them in making their determination, and it was not necessary to refer the matter to anyone else. Following the procedures set forth in Article 11.5.3.2(g), the Grievance Committee unanimously denied Plaintiff's request for a hearing. This denial had the effect of leaving in place the decision to terminate Plaintiff's employment.

Plaintiff had the opportunity to - and did - set forth voluminous arguments and evidence related to his objections to the way NIU treated him, and as such, he properly was afforded the opportunity to be heard. *Head*, 225 F.3d at 803-04. The requirements of the due process clause are "flexible" and require "only 'such procedural protections as the particular situation

30

demands.'"  *Riano v. McDonald*, 833 F.3d 830, 834 (7th Cir. 2016) (quoted cases omitted).  A

"hearing" need not involve cross-examination and a confrontation of witnesses in instances such

as this.  As noted by the Supreme Court in *Eldridge*:

> [t]he judicial model of an evidentiary hearing is neither a required,
> nor even the most effective, method of decisionmaking in all
> circumstances.  The essence of due process is the requirements that
> 'a person in jeopardy of serious loss (be given) notice of the case
> against him and opportunity to meet it.'  All that is necessary is
> that the procedures be tailored, in light of the decision to be made,
> to 'the capacities and circumstances of those who are to be heard to
> insure that they are given a meaningful opportunity to present their
> case.

*Eldridge*, 424 U.S. at 348-49 (internal citations omitted).  Here, Plaintiff Grady has benefited

from substantial procedural protections and multiple meaningful opportunities to respond.

It is of no consequence that Plaintiff disagrees with Defendants' decisions; such an

allegation does not amount to a claim for a constitutional due process deprivation.  *See Pugel v.

Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 666 (7th Cir. 2004) ("Due process does not require

decision-makers to adopt the charged party's explanation."); *see also Newman v. Burgin*, 930

F.2d 955, 960 (1st Cir. 1991) (affirming due process did not require university "to follow any

specific set of detailed procedures so long as the procedures the University actually follows are

basically fair ones").

## C.  Defendants Peters And Nicklas Are Entitled To Qualified Immunity

Even if the Court finds Plaintiff can proceed with his procedural due process claim

against Defendants Peters and Nicklas, both Peters and Nicklas are entitled to qualified

immunity. Qualified immunity shields government officials from civil "liability 'insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Only the plainly incompetent official

or one who knowingly violated the law are not immune. *See Malley v. Briggs*, 475 U.S. 335, 341-43 (1986).

In determining whether qualified immunity applies, the Court "must address two questions: [1] whether the plaintiff's allegations make out a deprivation of a constitutional right, and [2] whether the right was clearly established at the time of defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). A plaintiff bears the burden of showing that the constitutional right was clearly established at the time of the conduct in question. *See Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990). If a plaintiff fails either prong, qualified immunity applies. *Gonzalez v. Vill. of West Milwaukee*, 671 F.3d 649, 657 (7th Cir. 2012). As explained more fully below, Plaintiff: (1) cannot demonstrate his constitutional rights were violated; and (2) cannot establish his alleged right to more process in this case was "clearly established." Therefore, the Court should find qualified immunity applies here and grant summary judgment in favor of Defendants Nicklas and Peters.

### 1. Plaintiff Cannot Demonstrate His Constitutional Rights Were Violated

As noted above, Plaintiff cannot establish the process he was provided in the context of his employment was constitutionally deficient, and accordingly, he cannot defeat Defendants Peter's and Nicklas' claims of qualified immunity.

### 2. Plaintiff Cannot Establish His Alleged Right To More Process In This Case Was "Clearly Established"

Even if the Court cannot definitively determine that Plaintiff was afforded the constitutional due process he was due, the entitlement of Defendants Nicklas and Peters to qualified immunity does not fail since Plaintiff cannot satisfy the second prong of the test. To demonstrate the right violated was "clearly established," a plaintiff may identify "a clearly analogous case establishing a right to be free from the specific conduct at issue" or show "the

conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Plaintiff can do neither.

First, it is important to define the scope of the conduct at issue here. With respect to Defendant Peters, Plaintiff claims that Defendant Peters is responsible for failing to provide Plaintiff constitutionally sufficient due process even though Plaintiff has failed to link Defendant Peters to any of the alleged due process violations and, in fact, NIU had a new president, Douglas Baker, at the time the Grievance Committee convened under Article 11.5.3.2(g) and voted not to grant Plaintiff a hearing. With respect to Defendant Nicklas' alleged conduct, Plaintiff can only claim Defendant Nicklas denied him constitutionally appropriate due process at the pre-termination phase, as that is all the process over which Defendant Nicklas had control. Defendant Nicklas, as Plaintiff's supervisor, was responsible for determining whether or not Plaintiff's employment should be terminated in light of his conduct. As noted, Defendant Nicklas notified Plaintiff in writing of the specific Charges against him, invited Plaintiff to provide a written response, and met with him personally to hear Plaintiff's side of the story. Defendant Nicklas explained to Plaintiff the evidence against him and at the pre-termination meeting. Accompanied by his attorney, Plaintiff read his lengthy written response into the record of the meeting. Afterward, Defendant Nicklas notified Plaintiff in writing that his employment would be terminated, and the reasons for the termination.

Defendant Nicklas provided Plaintiff notice, an explanation of the evidence against him, and the opportunity to be heard. This alleged conduct not only satisfied due process, but also it does not rise to the level of egregiousness contemplated by qualified immunity case law. *See, e.g., Steidl v. Fermon*, 494 F.3d 623, 632-33 (7th Cir. 2007) (denying qualified immunity to

police officials who knowingly suppressed exculpatory material that was in their possession at the time of the trial as a violation of the defendant's constitutional rights).

Plaintiff cannot defeat the qualified immunity of Defendants Peters and Nicklas. He cannot point to a "clearly analogous case" indicating he should be free from the "specific conduct at issue." "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994). First, regarding Defendant Peters, if Plaintiff attempts to argue Defendant Peters is somehow responsible for the Grievance Committee's denial of a hearing, qualified immunity prevents liability. Defendant Peters was not empowered to review the alleged determination of the Grievance Committee to deny Plaintiff a hearing – a determination made after a new president was installed by NIU.

Second, with respect to Defendant Nicklas, even if Plaintiff attempts to argue Defendant Nicklas should be responsible for all the process Plaintiff was due (including the post-termination process), qualified immunity similarly prevents liability. At the time Defendant Nicklas decided to terminate Plaintiff's employment, Defendant Nicklas knew and communicated to Plaintiff that Plaintiff had available to him the procedure set forth in Article 11. The termination letter Defendant Nicklas sent Plaintiff specifically referred Plaintiff to Article 11. Defendant Nicklas could not know at the pre-termination phase what actions the Grievance Committee members would take pursuant to Article 11, and he had no control over those actions. Case law does not hold that individuals in Peters' or Nicklas' situations would be able to predict the future of Plaintiff's termination proceedings under Article 11 - a future over which these defendants had no control - to know how Article 11 would be implemented and remedy any possible due process defects in advance of Plaintiff's termination.

Under these specific circumstances, Defendants Peters and Nicklas are entitled to qualified immunity.

### 3. Under *Alston v. King*, Plaintiff Cannot Obtain Damages For Any Procedural Due Process Violation

Even if the Defendants Peters and Nicklas should be found liable for violating Plaintiff's procedural due process rights (which they are not), Plaintiff would not be entitled to the damages he seeks. "[A] plaintiff who succeeds on a procedural due process claim is entitled to those damages that are caused by the denial of the process required by the Constitution." *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000) (citing *Carey v. Piphus*, 435 U.S. 247, 263 (1978)). Specifically, a plaintiff may obtain damages for his termination if there is "a causal connection between the termination and the failure to provide a hearing;" however, "where the employer can prove that the employee would have been terminated even if a proper hearing had been given, the terminated employee cannot receive damages stemming from the termination in an action for a procedural due process violation." *Alston*, 231 F.3d at 386 (citing *Carey*, 435 U.S. at 260). *Accord Dargis v. Sheehan*, 526 F.3d 981, 998-90 (7th Cir. 2008) (holding where plaintiff had established procedural due process violation, district court "acted appropriately in directing the [employer] to conduct a hearing instead of proceeding to trial on damages"). In short, courts will not allow an employee to gain a windfall from the employer's mistake in procedure. When the employer can prove the employee would have been terminated with proper procedure, the employee may then seek damages, such as emotional distress, that are attributable to the deficient procedure if the employee "can convince the trier of fact that the distress is attributable to the denial of procedural due process itself rather than to the justified termination." *Alston*, 231 F.3d at 386 (citing *Carey*, 435 U.S. at 263).

In the interest of judicial economy, therefore, should the Court find in Plaintiff's favor on the procedural due process claims, it must also remand the matter to NIU's processes to determine whether Plaintiff would have been terminated regardless of any procedural defects.

4.      **Plaintiff  Is Not Entitled As A Matter of Law To Reinstatement To The Position of Chief of Police As A Remedy For Any Procedural Due Process Violation**

Moreover, if Defendants Nicklas and Peters were found liable for violating Plaintiff's procedural due process rights (which they are not), Plaintiff would not be entitled to the reinstatement remedy he seeks.  Reinstatement to a high level government position with considerable discretionary authority to act on behalf of a governmental entity, such as the Chief of Police and Public Safety, is simply not an available form of relief for a denial of due process. *Batagiannis v. West Lafayette Community School Corp.*, 454 F.3d 738, 741 (7th Cir. 2006) (holding that school district Superintendent, a policymaker and the "wielder of considerable discretionary authority" would not be entitled to restoration to her position for a procedural due process violation).  There is no dispute that the position of Chief of Police and Public Safety is a position with considerable discretionary authority.  The Position Description identifies it as an "executive level command position with full executive law enforcement authority."  (SOF ¶ 25.) Therefore, Plaintiff's prayer for the relief of reinstatement must fail.

IV.    **PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM AGAINST PETERS AND NICKLAS FAILS**

In Count VI of his FAC, Plaintiff claims that he "held a constitutionally protected liberty interest in his ability to continue seeking and obtaining future employment in the occupation…public law enforcement work as a sworn officer…" (SOF ¶ 17.)  Plaintiff also contends, in relevant part, that Peters and Nicklas "deprived Plaintiff of this liberty interest by abruptly suspending [him] from his position as NIUPD Chief…and subsequently causing and

36

confirming Plaintiff's termination from that position, in the highly public circumstances and manner set forth above…" (SOF ¶ 17.) Plaintiff further alleges that Defendants Peters and Nicklas deprived him of his liberty interests by "repeatedly making and publicly disseminating false… statements…thereby publicly stigmatizing Plaintiff and impugning his personal and professional reputation, character…" (*Id.*) Plaintiff states that these alleged actions have "caused him to lose other tangible employment opportunities and made it virtually impossible for him to find employment in his field and thereby effectively excluded him from his chosen occupation and career." (*Id.*)

Plaintiff's allegations stem from a November 10, 2012 news article regarding the initiation of disciplinary process against Plaintiff. In the news article, Acting Director of Public Safety Nicklas announced that "effective immediately, NIU police chief Donald Grady has been placed on administrative leave pending finalization of charges and disciplinary actions under the terms and conditions of his employment as well as university policies." Additionally, the publication quoted President John Peters as stating that "the findings of the court called into question the integrity of the criminal investigatory process, and we cannot under any circumstances tolerate such clear breaches of contracts, authority and responsibility." (SOF ¶ 39.)

This evidence, however, fails to meet any of the elements required for a constitutional liberty interest claim. In the Seventh Circuit, to state a claim for deprivation of a liberty interest, a plaintiff must show both: (1) a liberty interest; and (2) that such interest was deprived without providing adequate process. *McMahon v. Kindlarski*, 512 F.3d 983, 987-88 (7th Cir. 2008). To prevail on a liberty interest claim, a plaintiff must show that: (1) defendants made false statements that stigmatized him; (2) defendants are responsible for publicly disclosing the false,

stigmatizing information; and (3) "he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001); *Strasburger v. Bd. of Educ. Of Hardin County*, 143 F.3d 351, 356 (7th Cir. 1998). Critically, the statements in question must be both defamatory and disseminated publicly by the defendant. *Covell v. Menkis*, 595 F.3d 673, 678 (7th Cir. 2010). Plaintiff fails to meet his burden on all elements.

### A. Neither Peters Nor Nicklas Publicly Made False Statements That Stigmatized Plaintiff

Plaintiff has not shown that Peters or Nicklas publicly made any false statements about him. To the contrary, any public statements made concerning Plaintiff were in direct response to a criminal court's finding, *based upon Plaintiff's own testimony*, as well as the testimony of Ramakrishnan, of a mishandling of evidence in an ongoing criminal investigation.

Thus, Plaintiff's claim of a liberty interest deprivation fails at the outset, because none of the public statements at issue here were false; instead, they were based solely on the Judge's pronouncement of the NIUPD's *Brady* violations, which occurred while Plaintiff was Chief of Police and after Plaintiff himself testified in the *Rifkin* matter. "True but stigmatizing statements that preclude further government employment do not support [] [a liberty interest claim]. Nor do statements of opinion, even stigmatizing ones, if they do not imply false facts." *Strasburger*, 143 F. 3d at 356. *See also Ratliff v. City of Milwaukee*, 795 F.2d 612, 626 (7th Cir. 1986) (affirming judgment for defendant where stigmatizing charges were "essentially true" and citing the "substantial truth" standard articulated in *Codd v. Velger*, 429 U.S. 624, 628 (1977)).

### B. There Is No Evidence That It Is "Virtually Impossible" For Plaintiff To Find New Employment In The Law Enforcement Field

Even if this Court were to determine there is a genuine issue of material fact concerning whether Peters and Nicklas made publicly false statements that stigmatized Plaintiff, Plaintiff's

claim that Peters and Nicklas deprived him of his liberty interest in public law enforcement work as a sworn officer still must fail. This is because Plaintiff cannot prove, as he must, that "the circumstances of the termination [made] it virtually impossible for [him] to find new employment in that field." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348-49 (7th Cir. 1995).

In his Complaint, Plaintiff asserts it is virtually impossible for him to "find employment his field". (SOF ¶ 17.) This allegation is without a basis in fact. Plaintiff testified at his deposition that after his separation from NIU he was engaged for consulting services in a wrongful death case; in addition, he was engaged to consult for the U.S. Department of State regarding work on behalf of the Democratic Republic of Congo National Police. (SOF ¶ 80.) These engagements arose from or utilized Plaintiff's prior experience in public law enforcement. Therefore, Plaintiff cannot prove, as he must to maintain his liberty interest claim, that the alleged statements have so sullied his reputation that he has been "blacklisted" from a career in law enforcement and that he has been "foreclosed" from his "freedom to take advantage of other employment opportunities." *Olivieri v. Rodriguez*, 122 F. 3d 406, 408 (7th Cir. 1997).

The Court should therefore grant summary judgment in favor of defendants on Count VI of Plaintiff's FAC.

## V. COUNT VII OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE CLAIMS UNDER THE ILLINOIS STATE OFFICIALS AND EMPLOYEES ETHICS ACT MUST BE BROUGHT IN STATE COURT

Count VII of Plaintiff's FAC sets forth claims against Defendants Peters and Nicklas for alleged retaliation in violation of the Illinois State Officials and Employees Ethics Act, 5 ILCS 430/1-1 *et seq.* (hereinafter referred to as "the Ethics Act"). However, the language of the statute itself, confirmed by courts within this District, make clear that suits under the Ethics Act must be brought in state court. The Ethics Act, in relevant part, provides:

> Sec. 15-25. Remedies.  The State employee may be awarded all remedies necessary to make the State employee whole and to prevent future violations of this Article.  The circuit courts of this State shall have jurisdiction to hear cases brought under this Article.

*See* 435 ILCS 430/15-25.  Thus, because the Ethics Act explicitly provides that state circuit courts have jurisdiction to hear claims pursuant to the Ethics Act, Count VII must be dismissed on immunity grounds.  Courts within this jurisdiction have reaffirmed the language of the statute and held that Ethics Act suits must be brought in state court.

In *Cole v. Board of Trustees of Northern Illinois University*, 38 F. Supp. 3d 925 (N.D. Ill. 2014), *aff'd on other grounds,* 2016 WL 5394654 (7th Cir. Sept. 27, 2016), Judge Kapala dismissed the plaintiff's Ethics Act claim on immunity grounds.  The court held that the Ethics Act claim was "barred by the Eleventh Amendment because the waiver of sovereign immunity does not evince a clear indication of waiver of the Eleventh Amendment right to be free from suit *in federal court*, instead the Ethics Act only provides that suit is appropriate in Illinois circuit courts."  *Cole*, 38 F. Supp. 3d at 934 (*citing Block v. Ill. Sec'y of State*, No. 09-117-DRH, 2010 WL 706043, at *3 (N.D. Ill. Feb. 24, 2010) ("The State Officials and Employees Ethics Act provides only that '[t]he circuit courts of this State shall have jurisdiction to hear cases brought under this Article.'")).  Therefore, "while Illinois might have consented to suit in its own Courts, nothing in the statute states that it has consented to suit in federal courts.") *Cole*, 38 F. Supp. 3d at 934 (*citing Osteen v. Henley*, 13 F. 3d 221, 224 (7th Cir. 1993) ("In effect [plaintiff] is arguing that a state cannot waive its sovereign immunity in part, if the state doesn't want to be sued in federal court, it can't establish a court of claims to hear suit against it. But since a state can waive its sovereign immunity to suit in its own courts without thereby being deemed to have waived its Eleventh Amendment immunity to suit in federal court, we cannot see why a state cannot confine

damages suits against itself to a particular state court."). *See also Stone v. Board of Trustees of Northern Illinois University*, 38 F. Supp. 3d 935, 947-48 (N.D. Ill. 2014) (holding same).

Similarly here, Plaintiff's Ethics Act claims must be dismissed. Based on the clear and unambiguous language set forth in 435 ILCS 430/15-25, the State has confined suits under The Ethics Act to its own circuit courts. Defendants Peters and Nicklas therefore respectfully request that Count VII be dismissed on immunity grounds.

## CONCLUSION

Based on the foregoing undisputed facts, authority, and arguments, Defendants respectfully request that their Motion for Summary Judgment be granted, and that judgment be entered in favor of these moving defendants on all claims applicable to each of them in Plaintiff's FAC.

**Dated: October 28, 2016**                    Respectfully submitted,

Defendants Board of Trustees of Northern Illinois University, F. William Nicklas, John G. Peters, Debra Boughton, Katherine Little, Randi Napientek, Jonathon Ostenburg and Michael Stang

By: */s/ Gerald L. Maatman, Jr.*

Gerald L. Maatman, Jr.
Mary Kay Klimesh
Christina M. Janice
Seyfarth Shaw LLP
131 S. Dearborn St., Suite 2400
Chicago, IL 60603
gmaatman@seyfarth.com
mklimesh@seyfarth.com
cjanice@seyfarth.com
Tel: (312) 460-5000
Fax: (312) 460-7000

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, Jr., an attorney, do hereby certify that, on this 28th day of October, 2016, I have caused a true and correct copy of the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following:

> Michael R. Fox
> Fox & Fox
> 124 West Broadway
> Monona, WI 53716
>
> Randall B. Gold
> Fox & Fox, S.C.
> 111 East Wacker Drive, Suite 2600
> Chicago, IL 60601

*/s/ Gerald L. Maatman, Jr.*