IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD GRADY II, | Case No. 14-CV-1245 |
| Plaintiff, | |
| v. | Honorable Harry D. Leinenweber |
| BOARD OF TRUSTEES OF NORTHERN ILLINOIS UNIVERSITY, F. WILLIAM NICKLAS, JOHN G. PETERS, DEBRA BOUGHTON, KATHERINE LITTLE, RANDI NAPIENTEK, JONATHON OSTENBURG and MICHAEL STANG | |
| Defendants. | |

**GRIEVANCE COMMITTEE DEFENDANTS MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Debra Boughton, Katherine Little, Randi Napientek, Jonathon Ostenburg, and Michael Stang ("Grievance Committee Defendants" or "GC Defendants"),[1] pursuant to Rule 56 of the Federal Rules of Civil Procedure and Northern District of Illinois Local Rule 56.1, hereby submit this Memorandum of Law in Support of Their Motion for Summary Judgment.

**INTRODUCTION**

With respect to the GC Defendants at issue in this Motion, their experience is a cautionary tale that no good deed goes unpunished. The five volunteer Northern Illinois University ("NIU") employees who comprised the NIU Grievance Committee were tossed a hot potato in the form of Plaintiff's grievance. They were charged simply with following the procedures to which Plaintiff agreed - those set forth in their only guiding document, the Article

---

[1] Defendants Board of Trustees of Northern Illinois University ("NIU"), F. William Nicklas ("Nicklas"), and John G. Peters ("Peters") have separately and concurrently moved for summary judgment on Counts I, II, III, IV, V, VI and VI of Plaintiff's First Amended Complaint.

11 Grievance Procedures for Faculty and Staff of the NIU Bylaws ("Article 11") - and they did so. In return they were sued by Plaintiff for damages.

In Count V of his First Amended Complaint, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 alleging that he was denied procedural due process. (Doc. No. 6, FAC, Count V ¶¶ 1-6.)[2] Count V is the only Count brought by Plaintiff against the GC Defendants. Since the undisputed facts show that the only involvement of the GC Defendants was to consider Plaintiff's written request for a hearing before the Grievance Committee at Step III of Article 11 (SOF ¶¶ 63.),[3] the only allegations at Count V that can be attributable to the GC Defendants include Plaintiff's allegations that he had a "property interest in continued employment" and that after his termination he was "den[ied] . . . any adversarial hearing process." (Doc. No. 6, FAC, Count V ¶¶ 3, 6.)[4] While Plaintiff disagrees with the decision of the Grievance Committee in his Amended Complaint, he admits that the decision "was neither random nor unauthorized." (Doc No. 6, FAC ¶114.) The Grievance Committee had the authority under Article 11 to deny Plaintiff's request for a hearing made as part of his Step III grievance request. (SOF ¶ 52.) The GC Defendants did not engage in conduct in violation of Plaintiff's due process rights and they are also entitled to qualified immunity for their acts.

## FACTUAL BACKGROUND

---

[2] GC Defendants refer to paragraphs within the First Amended Complaint as "Doc. No. 6, FAC ¶__."

[3] GC Defendants refer to their Statement of Undisputed Material Facts as (SOF ¶__).

[4] In Count V, Plaintiff generally alleges that "[s]aid Defendants deprived Plaintiff of [his] property interest in his continued employment as Chief of the NIUPD by causing and confirming his suspension and termination from that position, as set forth above." (SOF ¶ 17.) To the extent that Plaintiff is asserting that the actions taken by the GC Defendants "caus[ed] and confirm[ed] his suspension and termination," the undisputed materials facts show that the only actions taken by them related to their role on the Grievance Committee. The GC Defendants are not liable for any procedural due process violations as a matter of law since Section 1983 mandates a state actor can only be liable for actions actually committed. *See Galdikas v. Fagan*, 342 F. 3d 684, 696 (7th Cir. 2003), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004).

2

I. ARTICLE 11'S GRIEVANCE PROCEDURES

Plaintiff was employed by NIU as the NIU Chief of Police and Public Safety and was classified by NIU as supportive professional staff ("SPS"). (SOF ¶¶ 3,18.) Plaintiff had a "Letter of Agreement" with NIU which specifically provided that: "Any termination for cause during the course of a contract year shall be pursuant to University procedures and protections available to other employees of similar rank and status." (SOF ¶ 22.) Article 11 set forth NIU's internal grievance procedures for SPS and, therefore, Article 11's grievance procedures were applicable to Plaintiff. (*See* SOF ¶ 54.)

These procedures, like the other rules and procedures affecting the employment of the faculty and staff at NIU, were created and established through "a shared process involving the faculty, students, administrative officers, supportive professional staff, and operating staff, each performing a role appropriate to the affected governance activities." (SOF ¶ 49.) Article 11 provides for a multi-step process ensuring the rights of grievants and the creation of a Grievance Committee at Step III to afford a grievant the opportunity for peer review of the grievable issue, including termination. (SOF ¶¶ 48-55.)

II. THE GRIEVANCE COMMITTEE

The Grievance Committee was formed under Article 11.5.3.2 with the authority to determine whether to grant or deny Plaintiff's Step III grievance request for a hearing. (SOF ¶ 63.) NIU employees Defendant Debra Boughton, Associate Athletics Director at NIU, Defendant Katherine Little, Lab Manager of the Center for Government Studies, Defendant Randi Napientek, Assistant Director of Student Academic Success, Defendant Jonathan Ostenburg, an ITS Application Software Support Analyst, and Defendant Michael Stang, the Executive Director of Housing & Dining at NIU, comprised the Grievance Committee. (SOF ¶¶

10-13, 63.) Each of these Defendants was an SPS employee and each had volunteered to serve on a panel from which the Grievance Committee was chosen for consideration of Plaintiff's Step III grievance. (SOF ¶ 64.) They did not receive extra compensation for their participation on the Committee. (SOF ¶ 64.) Prior to this appointment, they had not served on any SPS grievance committee. (SOF ¶ 65.) They were not attorneys. (SOF ¶ 64.) Members of the Grievance Committee had no interaction with Plaintiff and limited or no interaction with Nicklas. (SOF ¶¶ 66-67).

### III. PLAINTIFF'S GRIEVANCE CHALLENGING HIS TERMINATION

Plaintiff's employment was terminated on February 19, 2013. The termination letter sent by Nicklas, then Acting Director of Police and Public Safety, to Plaintiff set forth NIU's basis for making the termination decision. (SOF ¶¶ 3, 37, 48.) Shortly thereafter, on March 26, 2013, Plaintiff initiated an Article 11 Step I grievance challenging his termination. (SOF ¶ 59.) Plaintiff's grievance was denied at Step I (SOF ¶ 61.) and the parties stipulated to bypass Step II of the grievance process. Thereafter, Plaintiff grieved his termination pursuant to Step III. (SOF ¶ 62.) Plaintiff submitted over three hundred pages of information in support of his Step III grievance, including letters and detailed responses and input in response to the charges in support of his termination, including a copy of the November 2 and November 9, 2012 hearing transcripts in the *Rifkin* criminal proceeding. (SOF ¶ 68.)

In implementing the administrative processes related to Plaintiff's Step III grievance, Dr. Alan Rosenbaum, Executive Secretary of the University Council ("Rosenbaum"), initiated contact with, convened, and met with the members of the Grievance Committee to apprise them of their duties generally, including instructions that they should review and follow Article 11's grievance procedures. (SOF ¶ 63.) He instructed the Grievance Committee that they should

4

make a determination on the merits of the grievance. (*Id.*) He also distributed the written submissions of Plaintiff, Nicklas, and the other individual respondents to each member of the Grievance Committee packets. (*Id.*) In advance of the Grievance Committee convening, Defendants Boughton, Little, Napientek, Ostenburg, and Stang reviewed the three hundred-plus pages of Plaintiff's grievance submissions, as well as materials submitted by Respondents Nicklas, Peters, Cunningham, Blakemore, and Buettner. (SOF ¶ 68.)

The Grievance Committee convened on July 11, 2013. (SOF ¶ 70.) The Committee documented its deliberation indicating that there were no questions from the Committee about the grievance process, no questions from the Committee about the presented materials, no additional information was requested or required to make a recommendation, and no step in the grievance procedure was incorrectly skipped. The Committee voted unanimously to deny the request for a hearing. (SOF ¶ 70.) The Grievance Committee's determination to deny Plaintiff a hearing regarding his termination was authorized by Article 11.5.3.2. (SOF ¶ 73.) On July 12, 2013, Plaintiff received notice that his request for a hearing was denied and that decision concluded NIU's internal grievance procedures. (SOF ¶ 80.)

Because there was no hearing granted under Article 11.5.3.2, no findings and recommendations of the Committee were prepared under Article 11.5.3.3 or reported to the President of the University for further review under Article 11.5.3.4. (SOF ¶¶ 75 - 77.) Douglas Baker, who became President of NIU during the fourth week of June 2013, testified that he did not recall receiving any such findings and recommendations, and took no action on Plaintiff's grievance. (SOF ¶ 74.) Article 11.5.3.2, entitled "The Pre-Hearing Process" contains no provision requiring the President of the University to review or take action on a grievance after a Grievance Committee votes to deny a hearing. (SOF ¶ 75.) Article 11.5.3.3, entitled "The

5

Hearing Process," contains provisions calling for the Grievance Committee to prepare a "decision and recommendations" and "formal reports." (SOF ¶ 76.) Only Article 11.5.3.4, entitled "The Post-Hearing Process," contains provisions stating that the Chair of the Grievance Committee is required to forward a written report of its finding and recommendations to the President of the University, and contains provisions stating that the President is required to respond in writing with further action. (SOF ¶ 77.) Article 11.7, entitled "Affirmative Action," contains no provision stating that a grievance alleging discrimination or harassment shall be referred by a Grievance Committee to the Office of Affirmative Action and Diversity Resources. (SOF ¶ 78.)

## ARGUMENT

**I. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS AGAINST THE GC DEFENDANTS FAIL AS A MATTER OF LAW[5]**

The GC Defendants are not liable for any procedural due process violations based on Plaintiff's alleged property interest.[6] There is no dispute as to the following: (1) Plaintiff was an SPS employee; (2) through his employment contract, Plaintiff agreed to be bound by NIU

---

[5] The standard for summary judgment is well-known to the Court and will therefore not be restated at length herein. *See Anderson v. Donahoe,* 699 F.3d 989, 995 (7th Cir. 2012). To prevail, a movant need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).

[6] In Count V of his Amended Complaint and without asserting any allegations related to the GC Defendants, Plaintiff generally alleges that he was deprived of a constitutionally protected liberty interest. To prove a procedural due process violation has deprived a plaintiff of a liberty interest, the plaintiff must establish the defendant "publicly disclosed stigmatizing information that caused the plaintiff to suffer a tangible loss of other employment opportunities." *RJB v. Board of Ed. of City of Chicago*, 468 F.3d 1005, 1010 (7th Cir. 2006) (citing *Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994). "'In such cases, the employee's good name, reputation, honor or integrity must be called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field.'" *RJB*, 468 F.3d at 1010 (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). Here, Plaintiff does not claim and cannot establish the GC Defendants "publicly disclosed" any statements, and therefore, any asserted procedural due process claim based on a denial of Plaintiff's liberty interest must fail if raised against the GC Defendants.

termination procedures applicable to other SPS employees; and (3) those SPS procedures were followed by the GC Defendants. Plaintiff agreed to have his termination heard pursuant to the Article 11 grievance procedures and the GC Defendants implemented those procedures consistent with their terms. Plaintiff's Count V procedural due process claims against the GC Defendants fail as a matter of law.

### A. Plaintiff Waived Any Argument That He Was Entitled To More Process Than He Received Under Article 11

The terms of Plaintiff's Letter of Agreement establish that any termination for cause would be addressed through Article 11's grievance process. By explicitly and unequivocally agreeing to accept Article 11 as the applicable procedure to review his termination, Plaintiff waived any different or supplemental termination process. *See Batagiannis v. West Lafayette Community School Corp.*, 454 F.3d 738, 741 (7th Cir. 2006) (stating that "the Court has never doubted the ability of individual employees to waive entitlements or negotiate in advance the details of the hearings they will receive"). Plaintiff cannot now claim he was entitled to more process than he received under Article 11.

### B. Plaintiff Was Provided All The Process He Was Due From the GC Defendants

Section 1983 mandates a state actor can only be liable for acts he or she actually commits. "Section 1983 creates a cause of action based upon personal liability and predicated on fault. An individual cannot be held liable in a §1983 action unless he caused or participated in the alleged constitutional deprivation." *Galdikas v. Fagan*, 342 F. 3d 684, 693 (7th Cir. 2003), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Plaintiff must establish that there is a causal connection or an affirmative link between the challenged conduct and the defendants. *Id.* Accordingly, with respect to the GC Defendants, the Court must focus on whether the acts they

7

took violated Plaintiff's right to procedural due process. *See supra* note 4. The undisputed facts show that the acts taken by the GC Defendants were consistent with their charge under Step III of Article 11.

On May 29, 2013, Plaintiff submitted his Step III grievance request to Rosenbaum. (SOF ¶62.) As he had at Step I, Plaintiff again asserted that he was removed from his position without just cause and that he had been subjected to disparate and harsher processes and levels of discipline than non-minority employees. (*Id*.) As described above, following submission of Plaintiff's Step III grievance, Rosenbaum facilitated the formation of the Grievance Committee and distributed the materials submitted by Plaintiff and the other respondents for their review. Each member of the volunteer Grievance Committee read the voluminous submissions. (SOF ¶ 69.) These submissions included numerous records outlining the pre-termination and pre-Step III process already afforded Plaintiff, including but not limited to: the hearing transcripts from the hearings on November 2 and 9, 2012 which included Plaintiff's sworn testimony and Judge Stuckert's conclusions and findings considering that testimony; the Written Charges for Discipline/Discharge which provided Plaintiff a detailed explanation of the grounds for consideration of disciplinary action); Nicklas' January 9, 2013 letter notifying Plaintiff of the intent to initiate action to terminate Plaintiff's employment and Plaintiff's right to a meeting to discuss the charges against him and present information he believed relevant to the decision-making process; Plaintiff's January 31, 2013 letter telling his side of the story in response to the written charges; a transcript of the February 1, 2013 meeting held when Plaintiff presented information to Nicklas in response to the Charges; Plaintiff's February 3, 2013 letter asserting what he stated was racially discriminatory and retaliatory treatment; and, Nicklas' February 19,

8

2013 letter to Plaintiff notifying him of his termination and the specific reasons supporting the termination decision. (SOF ¶ 68.).

After reviewing the materials thoroughly, consistent with their charge,[7] the GC Defendants found Nicklas had submitted information sufficient to justify placing Plaintiff on paid leave and later terminating his employment. (SOF ¶¶ 70-71.) The Grievance Committee considered Plaintiff's claims of discrimination and denial of procedure, but it determined Plaintiff had not provided sufficient information to support a request for a hearing: he simply had not demonstrated a further hearing on the matter would yield information different from the plethora of information Plaintiff already had provided. (SOF ¶ 71.) Following the procedures set forth in Article 11, they voted unanimously to deny Plaintiff's request for a hearing. (SOF ¶ 70.) In accordance with Article 11, no further action was required from the GC Defendants, including any responsibility to report their denial of Plaintiff's hearing request to President Douglas Baker or to the Office of Affirmative Action and Diversity Resources. (SOF ¶¶ 70, 78.)

In reaching their decision, the GC Defendants were well informed of the processes afforded Plaintiff and Plaintiff's arguments and evidence related to his objections to the way NIU treated him as well as information in support of their conclusion that a hearing was not required. Their actions were not inconsistent with the requirements of procedural due process. A "hearing" need not involve cross-examination and a confrontation of witnesses in instances such as this. The requirements of the due process clause are "flexible" and require "only 'such procedural protections as the particular situation demands.'" *Riano v. McDonald*, 833 F.3d 830,

---

[7]Article 11 Grievance Procedures do not automatically afford a hearing to an SPS employee whose employment is terminated for cause. Step III of the process provides that the Grievance Committee must grant the request for a hearing if it "determines there are sufficient grounds and if the grievance issues have not been adequately resolved." (SOF ¶ 52.) It also provides that the Grievance Committee can deny the request for the hearing in which case the denial "concludes the grievance process." (*Id.*)

9

834 (7th Cir. 2016) (quoted cases omitted). Here, Plaintiff Grady has benefited from substantial procedural protections and opportunities to respond and all of Plaintiff's responsive information was reviewed by the Grievance Committee, including Plaintiff's own sworn testimony given in the *Rifkin* criminal proceeding. It is of no consequence that Plaintiff disagrees with the GC Defendants' decision, for such an allegation does not amount to a claim for a constitutional due process deprivation. *See Pugel v. Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 666 (7th Cir. 2004) ("Due process does not require decision-makers [sic] to adopt the charged party's explanation."); *see also Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir. 1991) (affirming that due process did not require university "to follow any specific set of detailed procedures so long as the procedures the University actually follows are basically fair ones").

### III. THE GC DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity shields government officials from civil "liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Only the plainly incompetent official or one who knowingly violated the law are not immune. *See Malley v. Briggs*, 475 U.S. 335, 341-43 (1986).

In determining whether qualified immunity applies, a plaintiff must establish "first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." *Gerhartz v. Richert*, 779 F.3d 682, 688 (7th Cir. 2015), *cert. denied*, ––– U.S. –––, 136 S.Ct. 319 (2015). "Clearly established" means "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001) (emphasis and internal quotation marks

omitted) (quoted case omitted). The Court "must address two questions: (1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right was clearly established at the time of defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Plaintiff bears the burden of showing that the constitutional right was clearly established at the time of the conduct in question. *See Landstrom v. Ill. Dep't of Children & Family Servs.,* 892 F.2d 670, 675 (7th Cir. 1990). If Plaintiff fails either prong, qualified immunity applies. *Gonzalez v. Vill. of West Milwaukee*, 671 F.3d 649, 657 (7th Cir. 2012). As explained more fully below, Plaintiff: (1) cannot demonstrate his constitutional rights were violated; and (2) cannot establish his alleged right to more process in this case was "clearly established." Therefore, the Court should find qualified immunity applies here and grant summary judgment in favor of the GC Defendants.

### A. Plaintiff Cannot Demonstrate His Constitutional Procedural Due Process Rights Were Violated

As noted above, Plaintiff cannot establish the process he was provided in the context of his employment was constitutionally deficient or that the actions taken by the GC Defendants violated his procedural due process rights. Accordingly, he cannot defeat Defendants' claims of qualified immunity.

### B. Plaintiff Cannot Establish His Alleged Right To More Process In This Case Was "Clearly Established"

Even if the Court cannot definitively determine that Plaintiff was afforded the constitutional due process he was due, the GC Defendants' entitlement to qualified immunity does not fail since Plaintiff cannot satisfy the second prong of the test. To demonstrate the right violated was "clearly established," a plaintiff may identify "a clearly analogous case establishing a right to be free from the specific conduct at issue" or show "the conduct [at issue] is so

11

egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Plaintiff can do neither.

First, the conduct at issue here - denying Plaintiff a formal hearing before the Grievance Committee in light of the full record submitted for their review - does not rise to the level of egregiousness contemplated by qualified immunity case law. *See, e.g., Steidl v. Fermon,* 494 F.3d 623, 632-33 (7th Cir. 2007) (denying qualified immunity to police officials who knowingly suppressed exculpatory material that was in their possession at the time of the trial as a violation of the defendant's constitutional rights).

Second, Plaintiff cannot point to a "clearly analogous case" indicating he should be free from the "specific conduct at issue." "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994). As noted, the GC Defendants played a discrete and limited role in the procedures available to Plaintiff - they were charged simply with applying Article 11. The Grievance Committee's threshold task under Step III of Article 11 was to determine whether to grant Plaintiff a hearing. The Article states the Grievance Committee shall:

> . . . grant the request for a hearing if it determines there are sufficient grounds and if the grievance issues have not been adequately resolved; it may request additional information from anyone it deems necessary; it may remand the matter to another individual or individuals for further consideration, including supervisory personnel who may have been bypassed in the initiation of the University-level grievance; or it may deny the request for a hearing.

(SOF ¶ 52.) At the time Plaintiff submitted his request for a grievance hearing and the documents to support his request, the GC Defendants would only have known they were tasked

with applying the procedures in place in Article 11 - the mechanism both Plaintiff and NIU agreed would govern Plaintiff's discipline - to answer the question should Plaintiff receive a hearing. Plaintiff cannot demonstrate that it was clearly established it would violate the procedural due process rights of an NIU SPS to fail to provide him more procedure that proscribed in his employment contract. Under these specific circumstances, the GC Defendants are entitled to qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

### C. Public Policy Counsels Granting Qualified Immunity To GC Defendants

Qualified immunity balances two important interests --"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials form harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). As noted, the GC Defendants <u>volunteered</u> for their positions on the Grievance Committee. They did not receive extra compensation for their participation on the Committee. (SOF ¶64.) The Grievance Committee was comprised of lay people who worked fulfilling varied roles supporting university life. (SOF ¶ 63-64.) Official immunity is "intended 'to protect public officials from the fear of personal liability that might deter independent action.'" *Erickson v. Koochiching Co.*, No. Civ. 05-716, 2006 WL 752949, * 22 (D. Minn. Mar. 22, 2006) (quoted case omitted). To deny qualified immunity here would chill independent review and participation by NIU faculty and staff in their own governance.

Moreover, prior to this appointment, the GC Defendants had not served on a SPS grievance committee. (SOF ¶ 65.) They were not attorneys. (SOF ¶ 64.) In the context of law enforcement, case law warns, for example, "We do not expect sheriffs to be judges and to have

13

the training to sort through every intricacy of case law that is hardly a model of clarity." *Bland v. Roberts*, 730 F.3d 368, 393-94 (4th Cir. 2013) (citing *Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1108 (8th Cir. 2004) (affirming qualified immunity for police officers because they "are not expected to parse code language as though they were participating in a law school seminar")). If police officials who work to enforce laws are not expected to be able to discern what is constitutionally appropriate, surely the Court should not hold lay university employees to a higher standard.

### IV. PLAINTIFF CANNOT AS A MATTER OF LAW OBTAIN THE REMEDIES HE SEEKS FOR ANY PROCEDURAL DUE PROCESS VIOLATION

Even if the GC Defendants should be found liable for violating Plaintiff's procedural due process rights (and they should not as a matter of law), Plaintiff is not entitled to the remedies he seeks. A plaintiff may obtain damages for his termination if there is "a causal connection between the termination and the failure to provide a hearing;" however, "where the employer can prove that the employee would have been terminated even if a proper hearing had been given, the terminated employee cannot receive damages stemming from the termination in an action for a procedural due process violation." *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000) (citing *Carey*, 435 U.S. at 260). *Accord Dargis v. Sheehan*, 526 F.3d 981, 998-90 (7th Cir. 2008) (holding where plaintiff had established procedural due process violation, district court "acted appropriately in directing the [employer] to conduct a hearing instead of proceeding to trial on damages"). The undisputed facts show that there is no causal connection between Plaintiff's termination and the GC Defendants actions. In such circumstances as exist here, the appropriate remedy for any procedural due process violation is to direct the employer to conduct the hearing.

Furthermore, reinstatement to a high level government position with considerable discretionary authority to act on behalf of a governmental entity, such as the Chief of Police and

14

Public Safety, is simply not an appropriate remedy. *Batagiannis v. West Lafayette Comm. School Corp.,* 454 F.3d 738, 741 (holding that school district superintendent, a policymaker and the "wielder of considerable discretionary authority" would not be entitled to restoration to her position for a procedural due process violation). There is no dispute that the position of Chief of Police and Public Safety is a position with considerable discretionary authority. The Position Description identifies it as an "executive level command position with full executive law enforcement authority." (SOF ¶24.)

For the reasons discussed above, Plaintiff's prayer for the relief of damages and reinstatement must fail.

## CONCLUSION

Based on the foregoing undisputed facts, authority, and arguments, the GC Defendants respectfully request that their Motion for Summary Judgment be granted, and that all of Plaintiff's claims brought against them be dismissed in their entirety.

Dated: October 28, 2016

Respectfully submitted,

Defendants Debra Boughton, Katherine Little, Randi Napientek, Jonathon Ostenburg and Michael Stang

By: */s/ Gerald L. Maatman, Jr.*

Gerald L. Maatman, Jr.
Mary Kay Klimesh
Christina M. Janice
Seyfarth Shaw LLP
131 S. Dearborn St., Suite 2400
Chicago, IL 60603
gmaatman@seyfarth.com
mklimesh@seyfarth.com
cjanice@seyfarth.com
Tel: (312) 460-5000
Fax: (312) 460-7000

## **CERTIFICATE OF SERVICE**

I, Gerald L. Maatman, Jr., an attorney, do hereby certify that, on this 28th day of October, 2016, I have caused a true and correct copy of the foregoing GRIEVANCE COMMITTEE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following:

> Michael R. Fox
> Fox & Fox
> 124 West Broadway
> Monona, WI 53716
>
> Randall B. Gold
> Fox & Fox, S.C.
> 111 East Wacker Drive, Suite 2600
> Chicago, IL 60601

*/s/ Gerald L. Maatman, Jr.*